JANET P. JEROME ET AL., EXECUTRICES (ESTATE OF FRANKLIN S. JEROME) *v.* JANET P. JEROME ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued October 9—decided December 2, 1952

*Hugh M. Alcorn, Jr.,* with whom was *Henry P. Bakewell,* for the appellant (defendant McMillan).

*Herbert L. Cohen,* with whom was *Edward J. Schoenbrod,* of the New York bar, for the appellee (named defendant).

*Francis P. Schiaroli* appeared for the plaintiffs but did not argue the cause.

O'Sullivan, J. This action was instituted by the executrices of the will of the late Franklin S. Jerome. The defendants, Janet Jerome and Louise McMillan,

were cited to appear as individuals and as trustees. The court adjudicated four issues, arising out of questions incorporated in both the complaint and a cross complaint filed by Janet Jerome. From the judgment entered thereon, Louise McMillan has appealed.

The unchallenged finding establishes the following facts: Franklin S. Jerome, a resident of the town of Orange for a number of years, died testate on June 22, 1948. He was survived by the defendants, one of whom, Janet Jerome, is his widow and the other, Louise McMillan, his daughter by a former marriage. His last illness was of short duration. Until then, he had actively served as president of a large manufacturing concern and of a banking corporation. His primary interest in these and other enterprises in which he participated lay in the field of finance.

Jerome executed his will on May 15, 1936. This was three days before he married the defendant Janet Jerome. In the will he made the following provisions which are relevant to the issues presented by the appeal: (1) In article first he directed his executrices "to pay all my just and lawful debts, funeral and testamentary expenses." (2) In article fifth he created a trust, consisting of one-half of the residue of his estate, for the life use of his widow and conferred upon her a testamentary power of appointment over the corpus of the trust. (3) In article sixth he created a trust of the other half of the residue for the life use of his daughter, Mrs. McMillan, with a like power of appointment.

In 1945, the General Assembly passed an act which now appears as chapter 102 of the General Statutes, captioned "Proration of Federal and State Estate Taxes." On April 2, 1948, the Congress of the United

States enacted the Revenue Act of 1948. 62 Stat. 117. Section 361 of that act added to § 812 of the Internal Revenue Code a new subsection providing for an additional deduction known as the "marital deduction." By virtue of this subsection, the net estate of a decedent subject to the federal estate tax is now reduced by the value of so much of the decedent's estate, not in excess of 50 per cent of the value of the adjusted gross estate, as is bequeathed, devised or passes to the surviving spouse.

Jerome did not revise his will subsequent to its execution in 1936. The total appraised value of his estate is $2,500,000. The parties are in agreement that the basic issue, determinative of the differences between them, is whether the widow is entitled, under the proration statute, to the full allowance of the marital deduction permitted by the federal estate tax law or whether it should be shared with the daughter.

The proration statute provides, in part, that federal and state estate taxes paid by an executor or other fiduciary upon any property required to be included in the gross estate of a decedent shall be "equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." General Statutes § 2076 (as amended, Cum. Sup. 1951, § 449b). Both defendants fall within the definition of "persons interested in the estate" of the testator. § 2075.

The federal estate tax, as the name implies, is a tax against the estate of a decedent. *Ericson v. Childs,* 124 Conn. 66, 81, 198 A. 176. It differs from an inheritance tax in that the latter is levied against the recipient of the taxed property. *Hackett v. Bankers Trust Co.,* 122 Conn. 107, 126, 187 A. 653.

The passage of the Proration Act did not destroy this distinction. It still exists in the manner discussed in *Blodgett* v. *Guaranty Trust Co.*, 114 Conn. 207, 217, 158 A. 245, although the executor may now seek from the beneficiaries reimbursement to the estate of the amount of the tax. In other words, while the primary obligation of paying the tax is borne by the executor, the ultimate burden now rests, by virtue of the proration statute, on those who benefit under the estate, except when the will clearly provides otherwise. *McLaughlin* v. *Green*, 136 Conn. 138, 141, 69 A.2d 289. "It was neither the purpose nor the effect of the proration statute to raise money for the federal government, and neither before nor after its enactment was the estate tax a tax upon beneficiaries under a will. The proration statute is not a taxing statute. The context of chapter 102 confirms this conclusion, for by its terms it applies only after the executor 'has paid' the tax (§ 2076). . . . " *Parlato* v. *McCarthy*, 136 Conn. 126, 132, 69 A.2d 648.

Mrs. McMillan maintains that the action before us is fundamentally one to construe a will. In this she is, in a manner of speaking, partially correct. The proration statute, she points out, recites that its provisions shall not govern in any instance "when a testator otherwise directs in his will." § 2076. This provision is highly desirable and accords with common sense. The testator should have the right to provide in his will that the recipients of his bounty shall receive their bequests free from taxation. A testamentary directive against the prorating of taxes, as provided by statute, cannot, however, be spun out of vague and uncertain language. *Uber's Estate*, 330 Pa. 417, 420, 199 A. 356. It must be clear and unambiguous, since the practical effect of such a provision is to increase the gifts to some by shifting to others

the burden of absorbing the tax. *Sherman* v. *Moore,* 89 Conn. 190, 193, 93 A. 241. "In the absence of a definite declaration on the subject it must be presumed that the intention was that the ultimate weight of taxation must rest where the law places it. It cannot be presumed that anything else was intended than what is stated in the written instrument." *Bemis* v. *Converse,* 246 Mass. 131, 134, 140 N.E. 686; *McLaughlin* v. *Green,* supra, 145.

It is urged that under article first of his will the testator expressly directed his executrices to pay the federal tax. That article, it will be recalled, required them "to pay all my just and lawful debts, funeral and testamentary expenses." This language cannot be construed as an unambiguous order to pay estate taxes contrary to the method prescribed in § 2076. "Testamentary expenses," the words specifically stressed by counsel, connote nothing more than the customary disbursements attendant upon the ordinary administration of an estate. They cannot be expanded to include a tax levied by the government upon the net avails of an estate. *Matter of Walbridge,* 170 Misc. 127, 128, 9 N.Y.S.2d 907; see *Matter of Stanfield,* 170 Misc. 447, 449, 10 N.Y.S.2d 613; *Matter of Parsons,* 258 N.Y. 547, 180 N.E. 326. *Starr* v. *Watrous,* 116 Conn. 448, 165 A. 459, cited by the daughter, is readily distinguishable. There the testator directed (p. 449) his executors to pay "all my just debts, funeral expenses, succession and other taxes." See *Baylor* v. *National Bank of Commerce,* 194 Va. 1, 72 S.E.2d 282. *Corbin* v. *Townshend,* 92 Conn. 501, 103 A. 647, also relied upon by the daughter, is not pertinent. That case held (p. 506) that, in computing the succession tax, any expenditure arising by operation of law which is a charge against an estate is an "administration expense" within the

meaning of that expression in the statute authorizing the deduction of "expenses of administration." It does not define these or similar words as they might be used in a will. The directive in article first in the case at bar does not cover the payment of estate taxes.

There is no force to a further contention of Mrs. McMillan that the testator intended complete and ultimate equality between his widow and his daughter, an objective which cannot be attained unless the estate taxes are paid by the executrices before and not after distribution to the two trusts created in articles fifth and sixth. That the testator did intend equality is obvious from the fact that for each defendant he left a trust of one-half of the residue with power of appointment over the principal, but, in view of his failure clearly to direct the estate to shoulder the tax burden, it was not net but gross equality which he contemplated, that is, equality in the residue before the payment of taxes. This must have been his intention since he is presumed to have known the law, including any changes made after the execution of his will which might affect its provisions. *Security-First National Bank* v. *Wellslager,* 88 Cal. App. 2d 210, 216, 198 P.2d 700. In the absence of a clear testamentary directive to the contrary, we conclude that the proration statute governs the manner in which the burden of the federal and state estate taxes must be borne.

Once this conclusion has been reached, the case no longer remains one of will construction. It becomes merely a tax case requiring the application of the proration statute to the amount due the federal and state governments for estate taxes. Under that statute, proration shall be made "in the proportion, as near as may be, that the value of the property,

interest or benefit of each . . . person bears to the total value of the property, interests and benefits received by all . . . persons interested in the estate, except that in making such proration allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act for the purpose of arriving at the value of the net estate." § 2076. One reason assigned for the enactment of the marital deduction was that the only method of approximating equality in federal estate taxation between residents of common-law jurisdictions on the one hand and of community-property jurisdictions on the other was to permit a person to bequeath one-half of his estate to the surviving spouse without taxation. See Sen. Rep. No. 1013, 80th Cong., 2d Sess., 26 (1948).

The proration statute authorizes the judge of probate, when preparing his schedule of proration, to make allowances for any deductions used in lowering the amount of the federal estate tax. While the statute does not specifically state to whom such allowances shall be given, the obvious inference is that it refers to those beneficiaries who received any property, interest or benefit, the value of which was used, by way of deduction, to reduce the amount of the taxable estate. In the case at bar, the application of the marital deduction will shrink the estate, for tax purposes, to substantially one-half its otherwise taxable size. Since the purpose for which the marital deduction was created was to permit the survivor to take, free of the federal estate tax, a share in the spouse's estate up to 50 per cent of its value, the deduction should properly be allowed as a credit against the value of the property passing to that survivor. 3 Locke & Kohn, Conn. Probate Practice, p. 152. Only through the allocation of the entire amount

of the marital allowance to the value of the widow's bequest will the intent as well as the spirit of the proration statute be met, for the statute is based on the equitable principle that the estate taxes should be borne by those whose bequests contribute to the tax burden and, conversely, that all those whose legacies do not in any way create or add to that burden should not be required to bear it. See Berman, "The Effect of the Federal Estate Tax on the Marital Deduction," 27 Taxes 529; note, 62 Harv. L. Rev. 1022. Mrs. Jerome's share in her husband's estate does not add to the tax burden. Indeed, through the application of the marital deduction, not only has the taxable estate been reduced by one-half but the rate at which the tax is computed has been substantially lowered. We find no error in the adjudications[1] made by the trier. *In re Fuchs' Estate,* 60 So. 2d 536, 537 (Fla.).

There is no error.

In this opinion the other judges concurred.

---

[1] The court adjudged as follows:

"1. The Will of Franklin S. Jerome does not contain a direction against proration of the federal estate tax and the Connecticut estate tax.

"2. The federal estate tax and the Connecticut estate tax should be prorated under the Connecticut Proration Act.

"3. The trust established under Article Fifth of said Will for the benefit of Janet Pouch Jerome, is exclusively entitled to the benefit of the marital deduction as provided for under the provisions of the Revenue Act of 1948 in computing the allocable part of the tax to be borne by said trust.

"4. The trust established under Article Sixth of said Will for the benefit of Louise Jerome McMillan, is not entitled to the benefit of one-half of the marital deduction as provided for under the provisions of the Revenue Act of 1948."