RALPH V. BALDWIN ET AL. *v.* THE TRADESMENS
NATIONAL BANK, ADMINISTRATOR C.T.A.
(ESTATE OF ALFRED C. BALDWIN), ET AL.

KING, MURPHY, MELLITZ, SHEA and KLAU, Js.

Argued October 4—decided November 1, 1960

*Gordon A. Evans* and *M. Lewis Chaplowe,* with whom, on the brief, were *John F. Bigley* and *Isadore Chaplowe,* for the appellants (plaintiffs).

*Edward N. Shay,* with whom were *Joseph M. Brandon* and, on the brief, *David E. FitzGerald, Jr.,* for the appellee (defendant Emma L. Baldwin).

KING, J. On December 20, 1957, Alfred C. Baldwin died testate, after a long illness, at the age of eighty-five. He had been a judge of the Superior Court until his retirement, in 1942, upon attaining the age of seventy. He left a widow, Emma L. Baldwin, their two children, Gail and Harland, and four children by a previous marriage, two of whom, Harriet Evans and Ralph V. Baldwin, are the plaintiffs herein. The decedent's estate consisted of his home, appraised at $30,000, together with cash and a half interest in a chose in action, totaling about $1300. The home is subject to a mortgage of $4200. Ante-mortem claims were presented in a total amount slightly in excess of $3000. The defendant executor has not acted upon the allowance or disallowance of these claims.

Under his will, the decedent left the use for life

of one-third of his estate to his wife and the residue to his six children, equally. Mrs. Baldwin, as the widow of a judge of the Superior Court, has received, since his death, an income from the state, in accordance with § 51-51 of the General Statutes, in the net amount, after taxes, of about $77 a week. Up until his death, the decedent, as a state referee, received, under what is now § 51-50, an income from the state in the net amount, after taxes, of approximately $200 per week. This income of course ceased at the decedent's death, and the estate has received no income from any source. Mrs. Baldwin applied, under § 45-250, for a widow's allowance in the amount of $200 per week. The Probate Court, after extended hearings, on January 5, 1959, granted the application to the extent of decreeing an allowance of $100 per week for a period of fifty-two weeks from the date of the decedent's death, but not beyond the date of the settlement of the estate. The allowance was solely for the benefit of the widow, as all six children are self-supporting. From the decree, the plaintiffs took an appeal to the Superior Court, which, after a full hearing, affirmed the judgment of the Probate Court. The plaintiffs thereupon appealed to this court.

They assign error in the court's refusal to grant a request, made by them under § 52-231, for a finding of the facts on which the Superior Court judgment was based. The court refused to make such a finding on the ground that the request was not made until nearly a week after the entry of judgment. It based its ruling on *Morris* v. *Winchester Repeating Arms Co.*, 73 Conn. 680, 685, 49 A. 180. We have no occasion to review this ruling, since there is nothing to indicate that the plaintiffs were harmed by it. They sought and obtained the usual finding, subject,

of course, to the ordinary rights of correction, in connection with their prosecution of this appeal. See *Davis* v. *P. Gambardella & Son Cheese Corporation,* 147 Conn. 365, 367 n., 161 A.2d 583.

The plaintiffs also seem to claim that the Superior Court erred in that, although it held a trial de novo at which all relevant evidence was admitted, it did not substitute its own discretion for that of the Probate Court, but, on the contrary, decided only whether the Probate Court had exercised its discretion reasonably and legally in decreeing that an allowance should be made, its amount and its duration. This claim is without merit. In any appeal from probate the Superior Court is exercising a limited statutory jurisdiction. *Killen* v. *Klebanoff,* 140 Conn. 111, 117, 98 A.2d 520; *Pavlick* v. *Meriden Trust & Safe Deposit Co.,* 139 Conn. 733, 736, 97 A.2d 265. It is true that in some types of probate appeal, such, for instance, as an appeal from a decree admitting a will to probate, the Superior Court not only hears all relevant and material evidence but enters its judgment affirming or reversing the probate decree without regard to, or consideration of, the action which the Probate Court had taken. See cases such as *Livingston's Appeal,* 63 Conn. 68, 73, 26 A. 470. In certain matters, however, the Probate Court is granted discretion as to the action it should take. In other words, primary jurisdiction to exercise a discretion is vested in it. In such instances, the "Superior Court, on appeal, could go no further than to determine whether that discretion had been legally and reasonably exercised." *Gwynn* v. *Tierney,* 138 Conn. 425, 428, 85 A.2d 250; *Crane* v. *Manchester,* 143 Conn. 716, 719, 126 A.2d 567. This is necessarily so, since to hold "that the Superior Court on appeal from probate may [itself] exercise

. . . [a] discretion committed to Courts of Probate is inconsistent with the principle implicit in the well-established rule that an appeal lies from the exercise of discretion by the Probate Court only in case of abuse of discretion." 1 Locke & Kohn, Conn. Probate Practice, p. 446.

In the making of an allowance to a widow under the provisions of § 45-250, the Probate Court is exercising a primary jurisdiction in that discretion is reposed in it to determine whether to make the allowance, and, if it is made, its amount and duration. *Lawrence* v. *Security Co.,* 56 Conn. 423, 443, 15 A. 406; *Havens' Appeal,* 69 Conn. 684, 698, 38 A. 795; 1 Locke & Kohn, loc. cit. It is true that in such an appeal there is a trial de novo in the sense that evidence which is relevant and material to the issues involved in the decision of the Probate Court is admitted. But the question before the Superior Court in the instant appeal was not, as the plaintiffs claim, whether it, in the exercise of its own independent discretion, on the evidence before it, and without regard to the result reached by the Probate Court, would award a widow's allowance and, if it did, what amount it would allow and for what period. "[T]he Superior Court cannot exercise a discretion vested in the Court of Probate; it can only review the exercise of that discretion to determine whether it has been reasonably and legally exercised. . . . The Superior Court cannot exercise a primary jurisdiction which by the statute is reposed in the Courts of Probate." *Reiley* v. *Healey,* 122 Conn. 64, 79, 187 A. 661; s.c., 124 Conn. 216, 222, 198 A. 570; *Richey* v. *First National Bank & Trust Co.,* 123 Conn. 360, 362, 195 A. 732; 2 Locke & Kohn, op. cit. § 392.

The second main claim of the plaintiffs is that the Superior Court erred in not concluding, on the evi-

dence before it, that the Probate Court abused its discretion (a) in granting any allowance at all and (b) in any event in granting an allowance which, at the end of the fifty-two weeks during which it is to run unless the estate is sooner settled, would exhaust one-sixth or more of the estate without regard to the amount of the claims against it. The plaintiffs sought, and to a great extent succeeded in obtaining, a finding going into meticulous detail as to Mrs. Baldwin's expenses for food, fuel, clothing and the like. They now seek to have this court review each item in order to determine the exact sum needed to provide Mrs. Baldwin with necessary subsistence. In our view of the case, it is unnecessary to recite these trivial items in detail. We dispose of the appeal on the basis of the finding, with a few material corrections to which the plaintiffs have shown themselves entitled.

The purpose of the statute authorizing the Probate Court to grant an allowance is not merely to provide a bare subsistence for a surviving spouse. "It was the practice, from a very early time in our history, . . . for the court administering the estate of a deceased person, to make such allowance out of the estate as it deemed proper for the support of the widow . . . of the deceased during the settlement of the estate; and this practice became a part of our common law. . . . In 1825 the . . . [forerunner of § 45-250] was passed, and this statute is in confirmation of our common law." *Havens' Appeal,* 69 Conn. 684, 698, 38 A. 795. While the statute (§ 45-250) provides that the allowance should be made only in such amount as the Probate Court "may judge necessary for the support of the surviving spouse or family of the deceased during the settlement of the estate," the word "necessary" is a rel-

ative term and does not restrict the allowance to bare subsistence. Rather, the statute contemplates the award of such amount as may be necessary, in addition to the other assets of the spouse, to maintain a household and manner of living appropriate to the decedent's station in life, in view of the financial condition of his estate upon his death. *Havens' Appeal,* supra, 699; 2 Locke & Kohn, op. cit., p. 312. Of course, an allowance cannot be granted for the purpose of enriching the widow at the expense of others entitled to the estate or of the rights of creditors in case of insolvency. But even the fact of insolvency is not, in and of itself, a ground for denying an allowance if one is found to be necessary. *Leavenworth* v. *Marshall,* 19 Conn. 408, 418; *Barnum* v. *Boughton,* 55 Conn. 117, 118, 10 A. 514. Here, Mrs. Baldwin had practically no funds, and her income consisted only of the $77 a week received from the state. The question before the Probate Court was what, if anything, was necessary, in addition to that sum, for her support.

The effect of the allowance is to provide her with an income of about $177 a week for the fifty-two weeks during which the allowance may run. While this seems very liberal in view of the size of the estate, we cannot say that as matter of law the Superior Court had to find that in granting the allowance the Probate Court abused its discretion. The important considerations to be weighed by the Probate Court in determining an application for such an allowance are summarized in *Havens' Appeal,* supra, 697-701. Here, it is obvious that the decedent, during his lifetime, generously provided for his home and family from the income which he received from the state. Although this income ceased at his death, the Probate Court not unreasonably could have con-

cluded, as it apparently did, that some period should be allowed Mrs. Baldwin to accommodate herself to the new, reduced, financial situation which confronted her.

One further claim remains to be considered. This is that any allowance to be made should have been imposed as an equitable charge on Mrs. Baldwin's share of the estate. That such an order may be made in a proper case is intimated, although not actually decided, in *Havens' Appeal,* supra, 701. See *Leavenworth* v. *Marshall,* supra, 419; 2 Locke & Kohn, op. cit. § 392, p. 313; *Weidlich* v. *First National Bank & Trust Co.,* 140 Conn. 686, 687, 103 A.2d 198. Under the will, Mrs. Baldwin receives only the income for life of one-third of the estate. Thus far there has been no income. If we assume, without deciding, that the Probate Court had the requisite authority and power to order the allowance to be charged against the interest in the estate of the decedent passing to the widow under the will, we cannot say that the court, at least with regard to the period in question, should have done so.

There is no error.

In this opinion the other judges concurred.