The **SECOND NATIONAL BANK OF NEW HAVEN**, Executor of the Will of Frederick F. Brewster, Late of Hamden, Deceased, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. No. 9435.

United States District Court D. Connecticut.

July 25, 1963.

Curtiss K. Thompson and John H. Weir, of Thompson, Weir & Barclay, New Haven, Conn., for plaintiff.

L. Lee Phillips, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith and David A. Wilson, Jr., Washington, D. C., Robert C. Zampano, U. S. Atty., New Haven, Conn., on the brief), for defendant.

TIMBERS, District Judge.

Plaintiff's motion for partial summary judgment on the issue of liability, pur-

suant to Rule 56(c), Fed.R.Civ.P., in this action to recover federal estate taxes in excess of $1,600,000 claimed to have been erroneously assessed and collected, raises questions of importance in the administration of the federal estate tax.

## FACTS

September 16, 1958 decedent died a resident of Connecticut, leaving a will and codicil. October 6, 1958 they were admitted to probate by the Probate Court for the District of Hamden, Connecticut.

Plaintiff, named as co-executor in the will, was appointed co-executor by the Probate Court and is now serving as sole executor, the co-executor having resigned May 7, 1962.

Decedent's will, executed June 5, 1958 and modified by a codicil executed July 1, 1958, after providing for certain specific bequests, left the residue in trust, one-third for the benefit of his widow and two-thirds for the benefit of his grandchildren surviving at his death.

January 5, 1959 an application was filed with the Probate Court for an allowance for the support of decedent's widow during settlement of the estate. February 2, 1959, after hearing, the Probate Court entered an order granting such allowance in amount of $350,000. March 13, 1959, in compliance with the order, the executors paid to the widow the allowance in one lump sum.

December 16, 1959 a federal estate tax return was filed showing an estate tax liability of $4,028,613.85 based on a gross estate of $13,201,347.90 and a taxable estate of $8,392,892.80.

The federal estate tax return showed, as part of the marital deduction,[1] the widow's allowance granted by the Probate Court and one-third of the decedent's residuary estate bequeathed to the widow in trust under the will, the latter computed without reduction by the amount of federal estate tax attributable to the residuary estate.

October 18, 1961, following an IRS audit of the estate tax return, there was forwarded to the executors a report of the examination showing a deficiency due in amount of $1,336,468.40. This deficiency resulted principally from two determinations made by the IRS: (1) disallowance of the $350,000 widow's allowance as part of the marital deduction (but allowance of a marital deduction for this payment in amount of $116,666.-67); and (2) decreasing the marital deduction claimed by the estate from $3,-630,243.95 to $1,682,846.59. The latter determination was based on the IRS' computation of the widow's share of the residuary estate *after* state and federal estate taxes had been paid, whereas the executors had computed the widow's share of the residue *before* estate taxes were taken into consideration.

November 10, 1961 the executors applied to the Probate Court for a determination of the proration of the federal estate tax.[2] Notice of the application and hearing thereon was given to the widow, two trust beneficiaries, the guardian ad litem for minor residuary trust beneficiaries and the District Director of Internal Revenue at Hartford. December 26, 1961, after hearing, the Probate Court filed a memorandum of decision and order directing, pursuant to the executors' application, that the federal estate tax on the pre-residuary bequests be deducted from the residuary estate before determining the amount of the widow's one-third part of the residue and that the federal estate tax attributable to the residuary bequests be prorated between those bequests.

April 6, 1962 the Commissioner sent to the executors a 90-day letter indicating that a deficiency of $1,333,194.35 in estate tax had been determined.

May 25, 1962 an assessment in amount of $1,333,194.35, plus interest of $195,-285.58, was made against the estate.

---

1. Pursuant to Int.Rev.Code of 1954, § 2056, 26 U.S.C. § 2056 (1958).

2. Pursuant to Conn.Gen.Stat. §§ 12–400 through 12–405 (1958).

May 29, 1962 the taxes and interest as assessed were paid.

June 7, 1962 a claim for refund in amount of $2,500,000 was filed.

August 14, 1962 the claim for refund was disallowed.

August 29, 1962 this action was commenced, pursuant to 28 U.S.C. § 1346(a)(1), to recover federal estate taxes claimed to have been erroneously assessed and collected.

By the instant motion for partial summary judgment on the issue of liability, plaintiff seeks a determination on certain questions of law, upon the resolution of which the amount of plaintiff's recovery, if any, in this tax refund action depends.

## QUESTIONS PRESENTED

Three questions are presented, the answers to which are believed to be dispositive of this motion for partial summary judgment:

(1) Whether the widow's allowance under Connecticut law is a "terminable" interest and therefore not deductible from the gross estate as a marital deduction?

(2) Whether the widow's one-third share of the residuary estate, under the terms of the will, is to be deducted from the resi-

due before the federal estate tax attributable to the residuary bequests is prorated among the residuary legatees?

(3) Whether the Connecticut Probate Court's determination with respect to the widow's allowance and its interpretation of the will with respect to proration of estate taxes are determinative of the rights of the federal government under the revenue laws?

The Court holds that questions (1) and (2) must be answered in the affirmative, question (3) in the negative.

### I

### WIDOW'S ALLOWANCE

A widow's allowance granted pursuant to state law during administration of the estate is a "property interest passing from the decedent to his surviving spouse"[3] and qualifies as a marital deduction which may be deducted from the gross estate to determine the taxable estate.[4] A limitation upon the widow's allowance as a marital deduction, claimed by defendant to be applicable here, requires that the allowance, to be deductible, must be one which will not terminate or fail.[5]

---

3. Treas.Reg. § 20.2056(e)–2(a) (1958):
"* * * An allowance or award paid to a surviving spouse pursuant to local law for her support during the administration of the decedent's estate constitutes a property interest passing from the decedent to his surviving spouse. * * *"

4. Int.Rev.Code of 1954, § 2056(a), 26 U.S.C. § 2056(a) (1958):
"(a) *Allowance of marital deduction.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall * * * be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."

5. Int.Rev.Code of 1954, § 2056(b) (1), 26 U.S.C. § 2056(b) (1) (1958):
"(b) *Limitation in the case of life estate or other terminable interest.—*
"(1) *General rule.*—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—
"(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and
"(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such

■ Whether the widow's allowance is an interest which will terminate or fail, is to be determined by state law.[6]

Plaintiff contends that under Connecticut law a lump sum allowance to a widow becomes absolute and indefeasibly vested as soon as the order of the Probate Court directing payment becomes final. Defendant contends that since the right to receive the allowance terminates upon the occurrence of such contingencies as the remarriage or death of the widow and the Probate Court decree may be modified, revoked or set aside on appeal, any award, whether lump sum or installment, is terminable.

By statute [7] Connecticut provides for an allowance to the surviving spouse during settlement of the estate. Under this statute, the Probate Court exercises "a primary jurisdiction, in that discretion is reposed in it to determine whether to make the allowance, and, if it is made, its amount and duration." [8] Among the important considerations to be weighed by the Probate Court in exercising its discretion is the estimated length of time for settlement of the estate and the advisability of a lump sum or periodic installment form of allowance.[9]

A widow's allowance, although characterized as a "statutory right" in one decision,[10] is said to be "not a property right" but "in the nature of a continuance of the support after the husband's death which he or his estate had furnished her before his death".[11] Being within the discretion of the Probate Court, the allowance is subject to an equitable balancing of interests.[12] Acting on equitable principles, the Probate Court under changing circumstances may revoke or modify its decree granting the allowance.[13]

Plaintiff in the instant case does not dispute the power of the Probate Court to revoke or modify its order granting an allowance to be paid in installments. Rather, plaintiff relies (i) on the fact that the allowance here was in the form of a lump sum award, and (ii) on language in Havens' Appeal [14] construing

property after such termination or failure of the interest so passing to the surviving spouse; * * *."

6. United States v. First National Bank & Trust Company of Augusta, 297 F.2d 312, 316 (5 Cir. 1951); Estate of Michael G. Rudnick, 36 T.C. 1021, 1023 (1961).

7. Conn.Gen.Stat. § 45–250 (1958):
"The court of probate may allow out of any real or personal estate of a deceased person in settlement before such court such amount as it may judge necessary for the support of the surviving spouse or family of the deceased during the settlement of the estate. * * *"

8. Baldwin v. Tradesmens National Bank, 147 Conn. 656, 660, 165 A.2d 331, 333 (1960).

9. Havens' Appeal, 69 Conn. 684, 697–701, 38 A. 795, 799–801 (1897).

10. Cowles v. Cowles, 74 Conn. 24, 26, 49 A. 195, 196 (1901).

11. Baker's Appeal, 56 Conn. 586, 588 (1888).

12. " * * * an allowance cannot be granted for the purpose of enriching the widow at the expense of others entitled to the estate or of the rights of creditors in case of insolvency." Baldwin v. Tradesmens National Bank, supra note 8, at 662, 165 A.2d at 334. See also Catalano v. Catalano, 148 Conn. 288, 292, 170 A.2d 726, 728 (1961) (marriage contrary to Connecticut public policy deprives surviving spouse of allowance); Alexander v. Alexander, 107 Conn. 101, 106, 139 A. 685, 687 (1927) (abandonment by surviving spouse during lifetime of decedent bars allowance); Cowles v. Cowles, 74 Conn. 24, 49 A. 195 (1901) and Staub's Appeal, 66 Conn. 127, 33 A. 615 (1895) (valid ante-nuptial agreement estops surviving spouse from claiming allowance).

13. Williamson's Appeal, 123 Conn. 424, 427, 196 A. 770, 771 (1937); Reiley v. Healey, 122 Conn. 64, 78, 187 A. 661, 667 (1936).

14. Haven's Appeal, supra note 9, at 696, 38 A. at 799:
"Had the court, anticipating the estate would be settled in one year, ordered that $5,000 be allowed during settlement, the executors could pay no more, however long the settlement might be delayed, unless a new order should be made. Had the court, anticipating the estate would not be settled in four years, ordered that $20,000

the effect of a revocation or modification by the Probate Court subsequent to payment of an allowance to a widow.

The Connecticut courts have not distinguished between lump sum and installment allowances in discussing the power of the Probate Court to revoke or modify their orders granting widows' allowances. Absent controlling authority and recognizing the power of Probate Courts to revoke or modify their decrees, this Court does not find the distinction between lump sum and installment allowances to be helpful in resolving the present question.

It appears that the Probate Court has the power to direct that the widow's allowance be charged against her interest in the estate.[15] The power of the Probate Court to impose an equitable charge against the interest in the estate of the decedent passing to the widow under the will suggests that the widow's allowance, whatever its form of payment, did not, prior to the recent statutory change,[16] become absolute and indefeasibly vested as soon as the order of the Probate Court directing payment became final.

■ The Court concludes that under Connecticut law, prior to the 1961 amendment to Section 45–250,[17] the widow's allowance, whether in lump sum or installment form, was subject to revocation or modification; might be the subject of an equitable charge against the widow's interest in the estate; did not become absolute and indefeasibly vested as soon as the order of the Probate Court directing payment became final; was, therefore, at the time it was granted, a terminable interest; and, under Section 2056(b) (1) of the Internal Revenue Code of 1954,[18] is not eligible as a marital deduction.

be allowed, the executors could not pay less, however soon the estate might be settled, unless the order were revoked before payment had been made. But the court, recognizing the uncertainty attending the settlement of a large estate, has determined the amount necessary for the widow's support during settlement, in accordance with the time the settlement shall consume, and has ordered that so much per month be allowed during settlement. The executors are thereby authorized to make such monthly payments, until the order is modified, revoked, or set aside upon appeal; but no revocation can make illegal, payments previously made in pursuance of the order."

15. Baldwin v. Tradesmens National Bank, supra note 8, at 663, 165 A.2d at 334; Havens' Appeal, supra note 9, at 701, 38 A. at 800–801.

16. Conn.Gen.Stat. § 45–250 was amended in 1961 by Public Act No. 370 (approved June 8, 1961, effective October 1, 1961) which added the following two sentences: "The right to support of a surviving spouse shall vest in such spouse upon the death of his spouse and shall not terminate with his subsequent death or remarriage. Any amount for support allowed to a surviving spouse shall become the absolute property of such surviving spouse or, if deceased, of his estate, without restriction as to use, encumbrance or disposition, and such

amount may, upon order of the court, be paid in a lump sum."
This amendment clearly makes the widow's allowance in Connecticut eligible for the marital deduction.
Defendant argues that this amendment confirms that prior thereto the widow's allowance was not a vested, non-terminable interest in Connecticut; otherwise "we can only assume that the Connecticut legislature enacted an unnecessary law, an assumption which should not be lightly made."
Plaintiff, on the other hand, argues that "There is no question of changing the law; it is merely a clarification, and the rule that 'an amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act' is applicable. City of Hartford v. Town of Suffield, 137 Conn. 341, 346, 77 A.2d 760, 762 (1950)."
The Court holds this amendment to be not applicable to the instant case. Moreover, absent authoritative legislative history, the Court finds no basis in the amendment from which to draw inferences one way or the other with respect to the terminability of the interest in a widow's allowance under Connecticut law prior to the amendment.

17. Conn.Gen.Stat. § 45–250 (1961).

18. Int.Rev.Code of 1954, § 2056(b) (1), 26 U.S.C. § 2056(b) (1) (1958).

## II

## FEDERAL TAXATION OF RESIDUE OF ESTATE

A major issue before the Court on the instant motion—the issue to which the largest revenue tag is attached—is whether any part of the federal estate tax is chargeable to the interest passing to the widow under the will. This issue turns chiefly upon whether there is a clear and unambiguous direction in the will against proration of taxes.

The original will, executed June 5, 1958, left the residue in trust, one-third for the benefit of the widow and two-thirds for the benefit of the grandchildren surviving at decedent's death. The trust for the widow did not qualify as a marital deduction. All residuary shares were taxable alike.

Article One of the will, which contains the "tax clause", provides:

"*ONE*: I direct my executors hereinafter named to pay out of my estate my just debts and funeral expenses and any death taxes which may be legally assessed upon or with respect to any property which is required to be included in my gross estate under the provisions of any

death tax law. The provisions of any statute requiring the apportionment or proration of such taxes among the beneficiaries of this will or the transferees of such property, or the ultimate payment of such taxes by them, shall be without effect in the settlement of my estate."

By a codicil executed July 1, 1958, the will was modified so that the residuary trust for the widow qualified for the marital deduction.[19]

The codicil also provided, "In all other respects I hereby republish and confirm my said will."

The Internal Revenue Code of 1954 allows a marital deduction to the extent of fifty percent of the value of the adjusted gross estate.[20] In determining the value of the marital deduction, the impact of the federal estate tax upon the share passing to the widow must be taken into account.[21] Under these statutory provisions there must be a determination whether any part of the federal estate tax is chargeable to the interest passing to the widow.

Applicable state law governs distribution of the estate and the ultimate impact of the federal estate tax.[22] By statute[23] Connecticut requires death taxes

---

19. The qualification of the widow's trust for a marital deduction is not disputed.

20. Int.Rev.Code of 1954, § 2056, 26 U.S.C. § 2056 (1958).

21. Int.Rev.Code of 1954, § 2056(b) (4), 26 U.S.C. § 2056(b) (4) (1958):
    "(4) *Valuation of interest passing to surviving spouse.*—In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—
    "(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and
    "(B) where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same

manner as if the amount of a gift to such spouse of such interest were being determined."

22. Harrison v. Northern Trust Co., 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407 (1943); Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942); Rogan v. Taylor, 136 F.2d 598 (9 Cir. 1943).

23. Conn.Gen.Stat. §§ 12–400 through 12–405 (1958).
    Section 12–401(a), insofar as here applicable, provides:
    "(a) When it appears from any administration account or in any appropriate proceeding in the probate court that an executor * * * has paid * * * the federal estate tax * * * the amount of the tax so paid, except when a testator otherwise directs in his will * * * shall * * * be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. * * * [I]n

to be prorated equitably except under certain circumstances, the one here applicable being the direction of the testator to the contrary in his will. If the Connecticut proration statute applies, as plaintiff contends, the trust for the widow, being itself exempt from federal estate taxes, should bear no part of such taxes.[24] If, on the other hand, the proration statute does not apply, as defendant contends, then the federal estate taxes are to be prorated among all shares of the residue, including the widow's trust.[25]

The specific question for determination is whether the testator intended, under Article One of his will, that the Connecticut proration statute should apply to the residuary shares of his estate.

Certain fundamental canons of construction must be followed.

■■ Republication of a will in the codicil, as here, in effect is the making of a new will as of the date of the codicil, with such changes in the will as are contained in the codicil.[26] That does not mean, however, that in construing the instrument the development of testamentary intent through the will and the codicil and the circumstances surrounding their execution are to be disregarded and the whole will read as though it were originally made at the date of the codicil. "From a will and its several codicils, like a statute with its later amendments, the maker's full intention is to be gathered." [27]

■■ Moreover, in attempting to determine the intent of the testator, it is necessary to examine not only the particular phrase in question but the language of the entire will in the light of the circumstances which surrounded the testator at the time he executed it, "the real question being, not what did the testator mean to say, but what did he mean by what he did say." [28]

■ Finally, the standard which the Court must apply in determining the legal effect of testator's will upon the question of proration of the federal estate tax is that, unless there is a "clear and unambiguous" direction in the will to the contrary, the federal estate tax is to be prorated as provided for in the Connecticut proration statute.[29]

making such proration, allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act for the purpose of arriving at the value of the net estate * * *."

24. Conn.Gen.Stat. § 12–401 (1958); Guaranty Trust Co. v. New York City Cancer Committee, 145 Conn. 542, 548, 144 A.2d 535, 538 (1958); New York Trust Co. v. Doubleday, 144 Conn. 134, 143, 128 A. 2d 192, 196 (1956); Jerome v. Jerome, 139 Conn. 285, 292, 93 A.2d 139, 143 (1952).

25. Resolution of these competing claims with respect to the computation of federal estate tax liability is of importance to both sides. Allowance of plaintiff's claim would result in a decrease of the adjusted gross estate by the entire one-third share of the widow to determine the taxable estate. Acceptance of defendant's claim would result in a larger taxable estate with a corresponding larger tax liability, since the widow's share, before determining the amount eligible as a marital deduction, would be subjected to its proportionate share of the federal estate tax. With a gross estate of $13,201,347.90, the federal estate tax difference between these two positions is substantial.

26. First National Bank & Trust Co. v. Baker, 124 Conn. 577, 583, 1 A.2d 283, 286, 118 A.L.R. 339 (1938); Griffith v. Adams, 106 Conn. 19, 32, 137 A. 20, 25 (1926).

27. First National Bank & Trust Co. v. Baker, supra note 26, at 583, 1 A.2d at 286; Giddings v. Giddings, 65 Conn. 149, 160, 32 A. 334, 335 (1894).

28. Swole v. Burnham, 111 Conn. 120, 122, 149 A. 229, 230 (1930); McLaughlin v. Green, 136 Conn. 138, 142, 69 A.2d 289, 291 (1949).

29. Morgan Guaranty Trust Co. v. Huntington, 149 Conn. 331, 335, 179 A.2d 604, 607–608 (1962); New York Trust Co. v. Doubleday, supra note 24, at 141, 128 A. 2d at 195 (1956); Jerome v. Jerome, supra note 24, at 289, 93 A.2d at 141; McLaughlin v. Green, supra note 28, at 142, 69 A.2d at 291.

Applying the "clear and unambiguous" standard, the Court finds that Article One of the will is not a clear and unambiguous direction against proration of taxes in the residue of the estate. Accordingly, the Court holds that the Connecticut proration statute applies to the residuary shares of the estate and the widow's trust, being itself exempt from federal estate taxes, should bear no part of such taxes.

The first sentence of Article One of the will, in providing for the payment of death taxes, shifted the tax burden for the pre-residuary transfers to the residue of the estate.[30] This shift in the tax burden focuses attention upon the meaning of " * * * beneficiaries of this will or the transferees of such property * * * " in the second sentence of Article One. At the time of making the original will, the residuary shares, not being qualified for charitable or marital deductions, were taxable and not entitled to any exemption. To attribute to the testator a direction against proration where no proration was possible, would render uncertain what the testator "did * * * mean by what he did say." [31]

Support for this construction may be found in a recent New York Court of Appeals decision:[32]

"In considering the testator's intention at the time he drafted the tax clause, one further aspect of his original will should be considered. Under the 1949 will, prior to amendment by codicil, the four equal residuary trusts therein set up were fully taxable, since no charitable deduction was allowable for the remainder interests of the Foundation which were contingent upon failure of primary private individual remaindermen * * *.

"Under the original scheme, then, taxes would have been paid out of the capital of the trusts, for there is no apportionment of taxes between income beneficiaries and remaindermen of a fully taxable trust * * *. Each of the four trusts under the original will thus had the same value for estate tax purposes, and the tax clause, drawn as part of the original will, was meaningless insofar as intra-residuary apportionment was concerned. *Whether apportionment was directed or not*, the tax burden on each residuary trust would have been the same. The residuary bequests were changed by codicil. Hence it is difficult to perceive how the clause now may be read as an express direction to accomplish something totally unnecessary when it was drafted." (emphasis added)

Plaintiff in the instant case claims, and the Court agrees, that there also is a conflict within the "tax clause" which renders ambiguous the intention of the testator concerning proration. The first sentence shifts the tax burden to the residue; but, according to the second sentence of Article One, the "beneficiaries", assuming they are intended as the residuary legatees, are not to be held for the "ultimate payment" of death taxes. Such directions in the "tax clause" are at cross-purposes. Obviously some legatees must pay the death taxes out of their share of the estate. To direct that neither pre-residuary nor residuary legatees are to be liable for death taxes, although testator must have known that the taxes

---

30. This construction apparently is conceded by both parties. "The directive in the will that all estate taxes be paid from the residue is not a directive against the prorating of estate taxes among residuary gifts." New York Trust Co. v. Doubleday, supra note 24, at 142, 128 A. 2d at 196.

31. Swole v. Burnham, supra note 28, at 122, 149 A. at 230.

32. In the Matter of Will of Shubert, 10 N.Y.2d 461, 475–476, 225 N.Y.S.2d 13, 23, 180 N.E.2d 410, 417–418 (1962).
The statutes of New York and Connecticut concerning proration of federal estate taxes are similar. See McLaughlin v. Green, supra note 28, at 142, 69 A.2d at 291.

must come from one or the other of these sources, renders such directions ambiguous.

In a similar situation the New York Court of Appeals held that conflicting directions in the tax clause precluded a clear and unambiguous direction against statutory apportionment: [33]

> "Someone is obligated to pay the estate taxes. * * * If the early direction be followed, viz., that the trusts be set up freed from all deductions for inheritance, transfer, estate or any other tax, then the direction that the taxes be paid out of the residuary estate is meaningless for the property going into the trusts comprises the entire residuary estate and after the trusts are set up freed from taxes no residuary remains from which taxes can be paid. The first clause directing the trusts to be set up free of tax and the last clause directing all taxes to be paid out of the residuary estate cancel out or neutralize each other. The net result is that this will does not contain a direction against statutory apportionment. However, in deciding this case we need not go that far. We need only hold that it *does not contain a clear and unambiguous direction to that effect.*"

Defendant's position, not wholly without appeal, may be summarized briefly: the bare wording of the "tax clause" does direct against proration; the joining of "death taxes" with "just debts" and "funeral expenses" does permit the inference that the testator intended federal estate taxes, as another expense, to be deducted from the residue prior to distri-

bution; and the widow's share was to bear its proportionate burden.

Plaintiff's construction of the tax clause in this will squares, in the opinion of the Court, closer than does that of defendant, with a rational intent of the testator, "the real question being, not what did the testator mean to say, but what did he mean by what he did say." [34]

The best that can be said for defendant's construction of the tax clause is that, considered in conjunction with that of plaintiff, it gives rise to the very ambiguity which robs the clause of that clarity and lack of ambiguity [35] necessary to constitute a direction against statutory apportionment.

### III

### EFFECT OF CONNECTICUT PROBATE COURT DECREES UPON RIGHTS OF FEDERAL GOVERNMENT UNDER REVENUE LAWS

In deciding the widow's allowance question in favor of defendant [36] and the proration of estate taxes question in favor of plaintiff,[37] the Court has considered, but has not regarded itself bound by, the determinations of the Probate Court on each of these questions.

The rationale for the decision of this Court that the decrees of the Probate Court are not binding in the instant case is found in the following statement by Judge Clark (in a case factually distinguishable from the instant case) : [38]

> "Although such a decision of the state court may bind the parties in the settlement of their legal rights between themselves, yet the determination of tax consequences is not to be so resolved. The decision of a

---

33. In Re Pepper's Estate, 307 N.Y. 242, 250, 120 N.E.2d 807, 811 (1954).

34. Swole v. Burnham, supra note 28, at 122, 149 A. at 230.

35. Webster's New International Dictionary (3d ed. 1963):
"ambiguity * * * 2a(1): The condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time."

36. Supra pp. 449–451.

37. Supra pp. 452–455.

38. Daine v. Commissioner, 168 F.2d 449, 451, 4 A.L.R.2d 248 (2 Cir. 1948). See Kelly's Trust v. Commissioner, 168 F.2d 198 (2 Cir. 1948) (once state court judgment is appealed, it loses whatever nonadversary or consent quality it may have had).

state court might well turn on elements of estoppel, laches, acceptance of benefits, rights of third parties, and other incidents of a decisive nature as to them, but in no proper sense to be held prejudicial to the federal revenue. Hence it is clear that the retroactive judgments of state courts do not determine the rights of the Federal Government under its tax laws."

Judge Hincks, while a judge of this Court, although holding, as did the Probate Court, that the testator intended to create separate trusts, rejected any notion that the decree of the Probate Court was binding on this Court: [39]

"The decree of the Probate Court finding that the testator intended to create separate trusts is not binding here. No notice other than by publication was given to the defendant, and the proceeding was uncontested. In Kelly's Trust v. Commissioner, 168 F.2d 198 (1948), a similar case, the Second Circuit through Judge Frank held that where an appeal is taken the proceeding becomes adversary in nature and binding upon the federal courts. No appeal was taken in the present case, however. See also in this connection, Reid v. Commissioner, 6 T.C. 438 (1946), where a state court judgment was not followed. I do feel, however, that in view of Redpath v. Auchincloss, 132 Conn. 690, 47 A.2d 315 (1946), the Connecticut courts would find separate trusts in a situation like the present."

The Court of Appeals for the Tenth Circuit has stated succinctly the rule that a state court decree which adversely affects tax rights of the United States and is based upon a nonadversary or collusive proceeding [40] does not foreclose the federal courts from determining the tax liability of the parties: [41]

"Legal rights and interest of parties in property are created and determined by state law but the manner in which and the extent to which such rights and interests shall be subjected to federal tax is determined by federal law. Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585; Brodrick v. Gore, 10 Cir., 224 F.2d 892; Brodrick v. Moore, 10 Cir., 226 F.2d 105.

"While rights and interests of parties in property are created and determined by state law, an order or judgment of a state court obtained through collusion, or attended with some other badge of fraud, or entered in a nonadversary proceeding, is not binding as between one or more parties to such proceeding and the United States in respect to income or estate tax imposed by federal legislation."

Some federal courts have held likewise; [42] others have held to the contrary. [43]

39. McHarg v. Fitzpatrick, 45 Am.Fed.Tax R. 1028, 1033 (D.Conn.1953), aff'd, 210 F.2d 792 (2 Cir. 1954).

40. As to what constitutes a nonadversary or collusive proceeding, see Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634 (1934); Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937); Saulsbury v. United States, 199 F.2d 578, 580 (5 Cir. 1952), cert. denied, 345 U.S. 906, 73 S.Ct. 645, 97 L.Ed. 1342 (1953).

41. In Re Sweet's Estate, 234 F.2d 401, 404 (10 Cir. 1956), cert. denied, 352 U.S. 878, 77 S.Ct. 100, 1 L.Ed.2d 79 (1956).

42. Kelly's Trust v. Commissioner, 168 F. 2d 198 (2 Cir. 1948); cf. Daine v. Commissioner, 168 F.2d 449, 451, 4 A.L.R. 2d 248 (2 Cir. 1948); Faulkerson's Estate v. United States, 301 F.2d 231, 232–233 (7 Cir. 1962), cert. denied, 371 U.S. 887, 83 S.Ct. 182, 9 L.Ed.2d 121 (1962); Stallworth's Estate v. Commissioner, 260 F.2d 760, 763 (5 Cir. 1958); Merchants National Bank & Trust Co. v. United States, 246 F.2d 410, 415–418, and cases cited at 417 n. 12 (7 Cir. 1957), cert. denied, 355 U.S. 881, 78 S.Ct. 148, 2 L.Ed. 2d 112 (1957); Pitts v. Hamrick, 228 F.2d 486, 490–491 (4 Cir. 1955); Brodrick v. Moore, 226 F.2d 105, 108 (10 Cir.

43. See note 43 on page 457.

The two decrees of the Probate Court in the instant case were final judgments on matters within that court's exclusive jurisdiction. As such, the decrees are conclusive determinations—*between the parties to the Probate Court proceedings* —of the widow's property rights, first, to the widow's allowance, and, secondly, to receive her share of the residuary estate without reduction by the federal estate tax attributable to the residue.

Defendant does not contend that plaintiff failed to follow the required procedure in submitting the issues to the Probate Court and in obtaining the decrees. Defendant does contend that the decrees of the Probate Court were "the result of a collusive and/or nonadversary proceeding."

This Court, upon the record before it in the instant case, is not able to make a finding as to whether the proceedings in the Probate Court were collusive or nonadversary in nature. Nor does this Court believe such a finding is either necessary or appropriate to a determination of the questions presently before the Court. Suffice it to say that, as this Court understands the delineation of federal power indicated by Judge Clark [44] and Judge Hincks [45] in this type of situation, it is the duty of this Court to make an independent determination of the rights of the taxpayer and of the rights of the government under the revenue laws of the United States. While this Court will not blind itself to any help which may come from adjudications of the state courts or from any other source, in the end questions such as those presented by the instant motion for summary judgment, being questions peculiar to the administration of the federal revenue laws, must be decided independently of any state court adjudications. And certainly the decrees of the Connecticut Probate Court—which is not a court of record and most of the judges of which are laymen, not lawyers—under no circumstances can be construed as binding and conclusive upon a federal court in construing and applying the federal revenue laws.

The basis upon which this Court rejects the claimed conclusive effect of the decrees of the Connecticut Probate Court is a broad one, and deliberately so.

## CONCLUSION

For the reasons indicated above, summary judgment on the issue of liability may be entered (1) in favor of defendant on the question of the widow's allowance, and (2) in favor of plaintiff on the question of proration of estate taxes.

1955); Brodrick v. Gore, 224 F.2d 892, 895–896 (10 Cir. 1955); Wolfsen v. Smyth, 223 F.2d 111, 113–114 (9 Cir. 1955); Newman v. Commissioner, 222 F.2d 131, 136 (9 Cir. 1955); cf. Doll v. Commissioner, 149 F.2d 239, 241–242 (8 Cir. 1945), cert. denied, 326 U.S. 725, 66 S.Ct. 30, 90 L.Ed. 430 (1945); First-Mechanics National Bank of Trenton v. Commissioner, 117 F.2d 127, 129–130, 132 A.L.R. 1459 (3 Cir. 1940); Brainard v. Commissioner, 91 F.2d 880, 883–884 (7 Cir. 1937), petition for cert. dismissed, 303 U.S. 665, 58 S.Ct. 748, 82 L.Ed. 1122 (1938); McHarg v. Fitzpatrick, 45 Am. Fed.Tax R. 1028, 1033 (D.Conn.1953), aff'd, 210 F.2d 792 (2 Cir. 1954); First National Bank of Montgomery v. United States, 176 F.Supp. 768, 772–775 (M.D. Ala.1959), aff'd, 285 F.2d 123 (5 Cir. 1961); See 10 Mertens, Law of Federal Income Taxation, § 61.03 (Zimet Rev.) (1958).

43. Darlington's Estate v. Commissioner, 302 F.2d 693, 694–695 (3 Cir. 1962); Beecher v. United States, 280 F.2d 202, 203–204 (3 Cir. 1960); Babcock's Estate v. Commissioner, 234 F.2d 837, 841–842 (3 Cir. 1956); Gallagher v. Smith, 223 F.2d 218, 222–227 (3 Cir. 1955) (en banc); Goodwin's Estate v. Commissioner, 201 F.2d 576, 581–582 (6 Cir. 1953); Nashville Trust Co. v. Commissioner, 136 F.2d 148, 150–152 (6 Cir. 1943); Plunkett v. Commissioner, 118 F.2d 644, 648 (1 Cir. 1941); cf. Channing v. Hassett, 200 F.2d 514, 518–519 (1 Cir. 1952); Martinson v. Wright, 181 F.Supp. 534, 536 (D.Idaho 1959); Gordon v. United States, 163 F.Supp. 542, 545–546 (W.D. Mo.1958); Stackpole v. Granger, 136 F. Supp. 382, 387–388 (W.D.Pa.1955); Weyenberg v. United States, 135 F.Supp. 299, 302–303 (E.D.Wis.1955).

44. Daine v. Commissioner, supra note 38.

45. McHarg v. Fitzpatrick, supra note 39.

458

The Court assumes, in view of its disposition of these questions, that the parties will be able to stipulate for final judgment.[46] Accordingly, it is ordered that final judgment be entered within 30 days from the date of this decision—upon stipulation as to the form and amount of judgment, if possible; if not, the form and amount of judgment will be settled upon notice.

If any issues remain unresolved after the procedure suggested above, the Clerk is directed to set the case for trial at the head of the calendar for the next session of court cases to be tried at New Haven.

46. In a letter to the Court dated January 15, 1963, defendant's counsel indicated the following manner of handling the computations in the event the Court should decide the issues as it now has decided them:

"With respect to the widow's allowance, if this Court should hold that it constitutes a terminable interest (as we contend), then, as a matter of law, the estate of Frederick F. Brewster is not entitled to a marital deduction under Section 2056 of the Internal Revenue Code of 1954.

\* \* \* \* \*

"If, however, this Court concludes that there was no clear direction against proration within the residue, then the plaintiff is entitled to recover as a matter of law. However, it should be pointed out that the amount which the plaintiff would be entitled to recover must be recomputed based upon a proper application of the Connecticut proration statute, and a proper appraisal of the estate tax liability which would result from the application of the proration statute."