CENTRAL VERMONT RAILROAD CO., RECEIVERS
AND MANAGERS, v. THE TOWN OF ROYALTON.

*Highway. Railroad.* R. L. ss. 3381–82.

1.  A town has no authority under the statute — R. L. s. 3381 — to lay out and build a
    highway across a railroad at grade.
2.  EQUITY JURISDICTION. A railroad company cannot resort to a Court of Chancery
    to restrain a town from building a highway across its track at level with it,
    unless it was informed and had reason to believe, and did believe, that the
    selectmen, when they laid the highway, intended to build the same above or
    below the track, and for that reason neglected seasonably to appeal, and
    thereby lost its opportunity to test the right to a grade crossing. There should
    be an allegation of irreparable injury in the bill.
3.  The word "may" in R. L. s. 3381 is construed to mean "shall" or "must."

BILL IN CHANCERY. Heard on bill, answer and agreed
statement, September Term, 1884, Franklin County, ROYCE,
Chancellor. Decree *pro forma*, and without hearing, that
the bill be dismissed. The bill set forth, in part:

"That said highway, so to be laid, would cross the said
Vermont Central Railroad at grade, and, if allowed to be
constructed across said railroad, would be a great injury to
the same, and cause great peril and danger to the public.

"And your petitioner further represents that the selectmen
of Royalton have now commenced the construction of said
highway, and propose to construct the same upon and
across said railroad at said Royalton, at grade; that your
petitioner has offered and is willing to have said highway
cross the said railroad by an overhead or an undergrade
crossing, so as not to obstruct or injure it, as provided by
statute; but the said selectmen, defendants herein, claim
the right to cross the road as hereinbefore stated."

The prayer was that the said town be enjoined "from
constructing a crossing upon and across the said Vermont

Central Railroad, at grade as hereinbefore stated, and from entering upon said railroad," etc.

*Noble & Smith,* for the orator.

The proceedings of the defendant town are void *in toto.* An attempt is made by the town to construct a highway across the orator's railroad, in absence of any statute or grant from the legislature permitting it to do so.

A railroad is a public highway. The property taken by it under the delegated sovereignty of the State, for the purposes of its railroad, is devoted to *public use.* HALL, J., in *White River Turnpike Co. v. Vt. C. R. R. Co.* 21 Vt. 594.

The case does not show, nor is it claimed by the defendant, that the town of Royalton has any authority to cross the orator's track, derived from special legislation, nor any right to do so, except as it may be inferred from the Vt. C. R. R. charter, or from sec. 3381, R. L.

The town has no authority to cross the railroad track at grade. The Constitution only provides that *private* property shall be subservient to public uses.

In *Springfield* v. *Conn. Riv. R. R.* 4 Cushing, 63, SHAW, Ch. J., says: "But when it is the intention of the legislature to grant a power to take land already appropriated to another public use, such intention must be shown by express words or by necessary implication."

It cannot be claimed that the provision in sec. 10 of the charter of the Vt. C. R. R. Co. (No. 53, laws 1843) confers a grant upon towns to cross a railroad. That provision reads: " Provided that nothing in this act shall be so construed as to prevent the crossing of said railroad with teams or otherwise, in such manner as not to injure the same."

This clause was a reservation, *not* a grant. The legislature in granting the charter to the railroad reserved thereby to itself the control of those who should cross the railroad, and when, and where, and how.

A similar provision has received directly this construction

claimed in the case of *Conn. & Pass. R. R. R. Co.* v. *Holton,* 32 Vt. 43.

Nor is R. L. s. 3381, in any sense a grant to the town to cross the right of way of a railroad. It does no more than define the *manner* of crossing, when the *right* to do so shall have been granted by the legislature.

A bill in equity will lie. The orator has not an adequate remedy at law.

A petition to the County Court must, under the statute, be based on dissatisfaction with the laying out of such highway or with the compensation for damages, as appears from the *record* of the report and survey of the selectmen. The County Court can only act in the matter through the instrumentality of the selectmen. Had the orator, therefore, attempted to petition the County Court, the petition would have very properly been dismissed on motion. The case of *State* v. *Williston,* 31 Vt. 153, is decisive on this point.

It would cause irreparable injury. Pom. Eq. ss. 237, 307, 1357; Godd. Ease. 368; *Dana* v. *Nelson,* 1 Aik. 252; Kerr Inj. c. 17, p. 145. The defendant cannot cross the track *at grade. Conn. & Pass. R. R. R. Co.* v. *Holton,* 32 Vt. 43; 2 Gray, 574; *Jackson* v. *R. & B. R. R. Co.* 25 Vt. 159. The word "may" should be construed "shall" or "must." *Low* v. *Dunham,* 61 Me. 566; *Milford* v. *Orono,* 50 Me. 529; *Kellogg* v. *State Treasurer,* 44 Vt. 356.

A statute to all intents and purposes (and almost identical in its language) like this one has been construed in Massachusetts to *prohibit* the laying of a highway across a railroad at grade. *B. & M. R. R.* v. *Mayor, &c. of Lawrence,* 2 Allen, 107.

*Lamb & Tarbell,* for the defendant.

This court should not take jurisdiction, because there was an ample remedy at law. *White* v. *Booth,* 7 Vt. 131;

*Smith* v. *Pettengill,* 15 Vt. 82; *Washburn* v. *Titus,* 9 Vt. 211; *Rob. Dig.* 130; *Currier* v. *Rosebrooks,* 48 Vt. 34. The statute has conferred upon the law courts alone jurisdiction of questions of this character. R. L. ss. 2940, 1, 2, 3. Exceptions on questions of law lie from the decision of the County Court to this court. See *Conn. & Pass. R. R. R. Co.* v. *Holton,* 32 Vt. 43; *Troy & Boston R. R.* v. *Potter,* 42 Vt. 265; 24 N. Y. 345.

The selectmen have a right, where the public good requires it, to lay a public highway across a railroad, and cause it to be worked at grade.

The orator's charter contained the following: "Provided that nothing in this act shall be construed to prevent the crossing of said railroad with teams or otherwise, in such manner as not to injure the same."

In considering this question the court should take notice of the common knowledge and experience of all.

The rule has always been for nearly forty years that when a highway crossed the railroad it was *at grade.* The number of overhead and underneath crossings can be counted on one's fingers; and these exist only where absolute necessity compels. The public and the railroads have given a practical construction to this statute.

Again, the ordinary meaning should be given to the word "may" in the statute. Rap. & L. Dic. tit. May; STORY, J., in *Minor* v. *Bank,* 1 Pet. 46, 64. This word "may" in a statute, is to be construed "must" or "shall" whenever it can be seen that the legislative intent was to impose a duty, and not simply a privilege or discretionary power, etc. The ordinary meaning of language must be presumed to be intended. *Newbury Turnpike Co.* v. *Miller,* 5 John Ch. 101; *Seiple* v. *Borough of Elizabeth,* 3 Dutch. 407-410; *Kellogg* v. *State Treasurer,* 44 Vt. 356. It should receive the same construction as in s. 3382. See *Jackson* v. *R. & B. R. R. Co.* 25 Vt. 159.

The charter of the Champlain & Connecticut R. R. Co.,

approved in 1843, in the provision for crossing canals, high-ways, or turnpikes, uses these words: "and said corporation may raise or lower such turnpike, highway, or private way, so that said railroad, *if necessary,* may pass under or over the same,"—Acts of 1843, No. 54, s. 14—and "provided, that nothing in this act contained shall be so construed as to prevent the crossing of said railroad, with teams or otherwise, in a manner not calculated to injure the same." We find the same proviso to the charter of the Brattleboro & Fitchburg R. R. Co. passed the same year. Acts of 1843. The charter of the Vermont & Canada R. R. passed in 1845, only permits the raising, or lowering, of existing roads or ways "*when necessary,*" and contains the same proviso as does the charter of the Vermont Central. Acts of 1845, No. 25, s. 14. And so does the charter of the Western Vermont R. R. Co., passed the same year. Acts of 1845, No. 28, s. 14. The same proviso is in the charters of other railroads. *See* Acts of 1848; Acts of 1850; Acts of 1860; Acts of 1882, No. 181.

The opinion of the court was delivered by

VEAZEY, J. The question whether under existing stat-utes a highway may be laid across a railroad and built at the same level, which is one of the questions in this case, has been twice argued in the General Term, and once at a regular term.

It is insisted, first, that there is no authority under our statutes to lay a highway across a railroad. The claim is that the legislature having granted to railroad companies the right to take land for their railroads, being for public use, the land thus taken cannot again be taken for other public use, without express or at least implied legislative authority to that effect; and that our statutes neither ex-press nor imply such authority. It is settled law that prop-erty already taken and held for public use by a corporation cannot be interfered with by another corporation for other public use, without legislative authority to that end. Pierce

on Railroads, 156, and cases there cited. But this authority may be created not only by express terms, but it may arise and is created, when it is a necessary implication from the conferment of corporate power to carry out certain objects of general concern. *In re City of Buffalo,* 68 N. Y. 167; *B. & O. & C. R. R. Co.* v. *Northwestern Reporter,* Vol. 1, 469. This stands on the proposition that every grant of power carries with it such incidental powers as are requisite to enable the grant to accomplish its declared object. On these principles it has been held in numerous cases in several states that the power of a municipality to lay highways, includes the power to lay them across an existing railroad, when it can be done without essentially interfering with the railroad. *A. N. R. R. Co.* v. *Brownell,* 24 N. Y. 345; *N. J. S. R. R. Co.* v. *L. B. Comrs.* 39 N. J. L. 28; *Bridgeport* v. *N. Y. & N. H. R. R. Co.* 36 Conn. 255; *Hannibal* v. *H. & St. J. R. R. Co.* 49 Mo. 480; *N. C. R. R. Co.* v. *Baltimore,* 46 Md. 425; *Atlanta* v. *C. R R. & B. Co.* 53 Ga. 120.

The question in this case therefore rests upon the construction to be given to section 3381 R. L., which is as follows: "If, after laying out and making a railroad, a turnpike road or other way is so laid out as to cross said railroad, the turnpike road or other way may be so made as to pass under or over the railroad, and shall be so made as not to obstruct or injure it."

This is a section of the general railroad law which was passed long after the enactment of the highway law. Indeed, railroads were unknown when the highway law was enacted; therefore, in its enactment the legislature could have had no direct reference to railroads; and it is a singular fact that no amendatory provisions are to be found in the *highway* statutes conferring any powers upon towns in respect to the crossing of railroads. The only suggestion upon the subject in all our statutes, is that contained in section 3381, of the general railroad law. As before seen, the

power to lay a highway across a railroad existed under the general authority to establish highways. The question is whether if laid across a railroad it could be built on a level with the track, or must go under or over it. We have no doubt but that by the word "over" in section 3381, was intended not *upon* but *above*, so the railroad should pass under the highway. This is evident from other provisions. The only case, to which we are referred, where this precise question has been raised, is that of the *Boston & Maine R. R. Co.* v. *Mayor &c. of Lawrence,* 2 Allen, 107. The Massachusetts statute was identical with ours; and the court there held that it prohibited the laying and building at the same level with the railroad. There was no other statute controlling the decision, as counsel have argued.

As the right to lay a way across a railroad existed prior to the enactment of section 3381, we see no reason why that right was not general to cross in any manner that should not essentially injure the railroad. The railroad company obtains only an easement, a right of way, by eminent domain, not the fee. A crossing above or below would not at all interfere with the easement, or, if at all, certainly the interference would be much less than by a grade crossing. When a right of way is obtained by eminent domain, the right to build the way by cuts, fills, or tunnels, is undoubtedly subject to the maxim, *sic utere tuo,* &c. As we think that before this statute was enacted a highway laid across a railroad could be built at grade, or above or below, the only object of the statute must have been to restrict or limit the method of building, not to confer a right. The word "may" can be construed as "shall" or "must," when such was the legislative intention. It should be so construed if the legislature intended to impose a duty and not simply confer a privilege or discretionary power. If the railroad company held the fee of its road bed, the same result would follow. It is argued that the word "may" in section 3381, must receive the same construction as the

same word in the next section, where it is plainly used in the permissive sense. But there is no basis for this claim, because the two sections are so unlike in purpose. The first section is a provision as to the manner of building a highway across a railroad, by the town, without interfering with the railroad. The latter is an express grant of power to a railroad company, which has laid a railroad across a highway, to interfere with the latter by raising or lowering its grade.

Our attention has also been called to numerous other statutes *in pari materia*, by counsel on both sides; but none of them are so related to this section as to be convincing the one way or the other.

It is also claimed that this is the first time the question has been raised since section 3381 was passed in 1849, and that there has been a popular practical construction which should be adhered to. If it clearly appeared that railroad companies and towns, through their respective officers, had in fact given this section the construction which the defendant now claims for it, it should have great weight with the courts; but there may have been so many reasons why no question was made, independent of the view as to strict right, we think it cannot fairly be assumed that there has been this practical construction of the statute. There is nothing in the case to show how highways laid across railroads have been built. It is not claimed but that some have been over or under the railroad. It is easy to see that railroad companies may have preferred and agreed to grade crossings in many instances. It is mere speculation as to the number of highways laid across railroads since the latter were built. It is not probable that the number is large. Grade crossings are very numerous, but they mostly occurred by building railroads across highways instead of highways across railroads.

It is also claimed that if the right to build on grade with the railroad did not exist, then the existing grade crossings

are illegal and may be fenced by the railroad companies. This assumes that the companies did not assent to them. We apprehend that an attempt to block existing highways would find speedy remedy in the legislature, even if the courts were powerless. It would seem that there ought to be provision for laying and building highways across railroads at the same level, under proper regulations and restrictions, but not without them. As a general rule, the public interested in the use and safety of a railroad is much larger than that interested in a single highway. They are both devoted to public use. Every grade crossing, though it may accommodate the few who use the highway, increases the danger of the multitude who use the railroad. Our statutes are specific and full in regulations for the maintenance and protection of crossings created by building railroads across highways, but in comparison are notably wanting in such regulations in case of crossings created by building highways across railroads. It is better that grade crossings should not be increased until those regulations are provided. The legislature of Massachusetts have wisely regarded grade crossings so objectionable that they are not authorized for mere reasons of public *convenience*, but only when public *necessity* requires it. The objection to grade crossings increases with the frequency and rapidity of trains, and the growing habit of the people to travel by rail. Whether it was oversight in legislation, or design, that our statutes should not authorize the building of highways across railroads at the same level, we think they are so left, and that the reasons for this view, upon comparison of all the statutes on the subject, are quite as strong as they were in Massachusetts, when the court of that State adopted the same construction of their statute, from which ours was evidently copied. If it is desirable to change the statute the time is not distant when it may be done, and under such regulations as will protect all interests and especially the safety of the travelling public.

It is insisted that the orator cannot resort to chancery as it had remedy at law. This would seem to be so as to the question of right to lay the highway across the railroad. Whether it may invoke the remedy of an injunction in chancery to restrain the building at grade would depend upon the facts alleged in the bill. If the orator could have and had alleged that it was informed and had reason to believe and did believe that the selectmen, when they laid said highway, intended to build the same above or below the railroad as they might lawfully do, and not at level with it, and for that reason neglected seasonably to appeal, and thereby lost its opportunity to test the right to a grade crossing, and had alleged irreparable injury, etc., we think it would have made a case for remedy by injunction; but the bill is wanting in all these respects, and on the other hand says, "that said highway so to be laid would cross the said Vermont Central R. R. at grade," &c. It is quite plain that the description of the proposed highway, in the order of the selectmen laying it, imported a laying at grade with the railroad. And it appears from the agreed statement of facts that the selectmen refused to entertain the idea of a crossing above or below grade. An appeal would therefore have afforded complete remedy. For this reason the *pro forma* decree of the Court of Chancery dismissing the bill must be affirmed. Kerr's Injunctions in Equity, 3. We have taken the occasion to decide the other questions in this case, as they are also raised and have been argued in the case of the *Connecticut & Passumpsic R. R. Co.* v. *The Town of St. Johnsbury,* which is a suit at law upon appeal from the order of the selectmen, and stands in this court on exceptions to the judgment of the County Court, on report of the commissioners.

Decree affirmed and cause remanded.