Capobinco *v.* Samorak.

---

CHARLES CAPOBINCO *vs.* HELEN SAMORAK ET AL.

First Judicial District, Hartford, January Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The rule of statutory construction, that the word "may" will be read as "shall" or "must," to accord with the legislative intent, is especially applicable to a statute conferring upon a public officer a power to be exercised by him for the public interest or for the benefit of third persons.

The provisions of § 5891 of the General Statutes, that upon proper application a court "may" order the substitution of a new attachment bond and "may," if the order be disobeyed, render judgment for the plaintiff by default, are mandatory, not permissive.

After the defendants in the present case had been ordered to substitute a new attachment bond or suffer judgment by default, it appeared that they had fled the jurisdiction, whereupon the trial court granted the motion of the surety upon the original bond that the order be revoked and the case tried upon its merits,

*Held* that the trial court erred, since the plaintiff had an absolute right to a judgment by default.

Argued January 6th—decided April 3d, 1925.

ACTION for damages alleged to have resulted from the wrongful conduct of the defendants in excluding the plaintiff from possession of a restaurant business in which he had purchased a one-half interest, brought to and tried by the Superior Court in Hartford County, *Marvin, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *Error and new trial ordered.*

This was an action by plaintiff wherein he alleged that defendants had forcibly and unlawfully expelled him from certain real property in which he had an interest, and had forcibly taken possession of certain personal property belonging to him. The action was commenced by an attachment on mesne process, and for the goods attached a bond was substituted on November 28th, 1922, with one Smerczniak as surety, in the penal sum of $1,000. On October 8th, 1923, plaintiff brought an application to the court, *Maltbie, J.,* alleging that although the surety was able to qualify at the date of the giving of the bond, he was not qualified to act as such surety at the date of application, and moved for a new bond with a licensed surety company, or some responsible inhabitant of the State as surety, and in default of such substituted surety, for a judgment by default following the tenor of General Statutes, § 5891, which is printed in the footnote.

Upon such application the court ordered that a new bond of some licensed surety company, or some re-

Sec. 5891. ATTACHMENT; NEW BOND MAY BE REQUIRED. The court before which any action may be pending, in which such a bond has been given, may, on application of either party, and due notice to the other, order that a new bond of a licensed surety company or

Capobinco *v.* Samorak.

sponsible inhabitant of this State, be substituted on or before November 2d, 1923, in lieu and discharge of the original attachment bond, and if such bond was not given on or before November 2d, 1923, then judgment to be rendered in favor of plaintiff by default. On October 27th, 1923, the attorney for the surety, Smerczniak, in the original attachment bond entered his appearance for defendants for the sole purpose of protecting the surety and moved that, owing to the fact that the defendants had fled the jurisidiction, the order for the new bond be dissolved, and opportunity given for the trial of the issues of the case. The court granted this motion and the cause proceeded to trial upon an answer filed April 20th, 1923, and signed, "Defendants, by Max L. Goldenthal, Their Attorney," and a reply filed thereto by plaintiff May 21st, 1923, before *Marvin, J.;* Mr. Goldenthal conducted the trial for defendants, and judgment was rendered for them. Among the reasons of appeal is a claim that the action of the court with regard to the substitution of a new bond is erroneous. Further facts appear in the opinion.

*Terry J. Chapin,* for the appellant (plaintiff).

No counsel appeared for the appellees (defendants).

KEELER, J. The trial judge in setting aside the order for a new bond, evidently construed § 5891 as being permissive and discretionary in that the word "may" rather than "shall" is used in conferring the jurisdiction upon the court. It is familiar law that it

---

some responsible inhabitant of this state be substituted in lieu and discharge of the original one; and, if said order be made on application of the plaintiff, may render judgment in his favor by default, if such substitution be not made within such time as the court may appoint.

is often necessary to construe the word "may" as equivalent to "shall" in a statute in order to effectuate the legislative intent, which must in all cases govern. In a way each statute must be construed by itself in connection with the apparent legislative intent regarding the right or remedy which is created. There are, however, some general rules commonly accepted as governing the subject. Sutherland on Statutory Construction (2d Ed. Vol. 2) § 637, p. 1151, quoting from the leading case of *Supervisors* v. *United States,* 71 U. S. (4 Wall.) 435, 446, says: "The conclusion to be deduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in effect peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all cases it is held that the intent of the legislature, which is the test, was not to devolve a mere discretion, but to impose 'a positive and absolute duty.' "

The rule is shortly stated in *Brokaw* v. *Commissioners of Highways,* 130 Ill. 482, 490, 22 N. E. 596, as follows: "The word 'may,' in a statute, will be construed to mean 'shall' whenever the rights of the public or of third persons depend upon the exercise of the power or the performance of the duty to which it refers." This case is also reported in 6 L. R. A. 161, and the appended annotation mentions numerous supporting authorities. Leading and often cited cases are: *People ex rel. Conway* v. *Livingston,* 68 N. Y. 114;

*People ex rel. Otsego County Bank* v. *Otsego,* 51 N. Y. 401; *Mayor of New York City* v. *Furze,* 3 Hill (N. Y.) 612; *Central Vt. R. Co.* v. *Royalton,* 58 Vt. 234, 4 Atl. 868; *Mason* v. *Fearson,* 50 U. S. (9 How.) 248, 259; *Binder* v. *Langhorst,* 234 Ill. 583, 85 N. E. 400. See also 20 Amer. & Eng. Ency. of Law, 239. We have recognized and applied the rule in *Lyman* v. *Rice,* 41 Conn. 245, 248; *State* v. *Neuner,* 49 Conn. 232, 233; *State* v. *Richards,* 74 Conn. 57, 60, 49 Atl. 858.

The rule is of frequent application in statutes relating to procedure. 20 Amer. & Eng. Ency. of Law, 242. "Instances are very common where the word 'may' is used as a synonym for 'shall' or 'must.' The word is usually construed as mandatory, rather than permissive, when a statute prescribing rules of procedure declares that in a certain event the court 'may' act in a certain way. To warrant a different interpretation in such cases, it should clearly appear from other provisions of the statute that the exercise of the power conferred was intended to be discretionary." *Northwestern Mutual Life Ins. Co.* v. *Keith* (U. S. C. C. App.) 77 Fed. 374, 375. See also *Ingalls* v. *Ingalls,* 150 Mass. 57, 58, 25 N. E. 92; *Davison* v. *Davison,* 17 N. J. L. 169, 171.

It would appear, in view of what we have just said, that unless the section in question carries the clear implication of a discretionary jurisdiction conferred, to be assumed or declined as to the authority acting might seem just or advisable, the plaintiff was entitled to his order for a new bond, and, if so entitled, to the further relief provided by the statute in case of a failure to comply with the order. One has only to turn the pages of the statute book at random to find that jurisdiction on the most important and common subjects of litigation is conferred by the use of the word "may" in the statute thereto relating. If the mere use of this word

should in all matters confer only a discretionary power, our courts would be shorn of much of their every-day jurisdiction. The section of the statutes under consideration is but one part of a scheme of legislation permitting a defendant whose estate has been seized by attachment to recover its possession and use by filing a bond in substitution for the lien of the attachment. Provision for dissolution of an attachment by substituting a bond was first made in 1848, when a comprehensive statute was enacted. Its first section is substantially § 5884 of the General Statutes of 1918, and its succeeding sections follow the order and content of the sections following in the revised statutes with slight amendment until we reach § 5891. Provision for the substitution of a new bond for one already given on the application of defendant was made by the General Assembly in 1864, and further provision for a new bond upon the application of the plaintiff in 1870, which two enactments were consolidated in the Revision of 1875 in the same wording as in the Revision of 1918, § 5891, except for the addition in the latter of the words "a licensed surety company." The provisions of the law of 1848 as since modified, although purely statutory, are distinctly remedial. The seizure by attachment on mesne process of the property of a defendant and taking from him its use and custody, and its sequestration pending suit, is a harsh process, peculiar to the New England States and not in general use throughout the country. It was highly expedient and just that a defendant should have the right to recover the property attached that he might have the use of it, provided the plaintiff could be properly secured in case he prevailed in the action; hence the legislation of which we have spoken. In any given case a bond is given, and the property passes from the custody of the attaching officer, and of the law. Just as important

as the right of the plaintiff to have this security in lieu of his attachment, is his right that the security shall be held and kept good. A reading of § 5884 to § 5890, taken in connection with common practice, would justify no one in concluding that the authority before whom the application was made in accordance with their provisions, would have discretion to grant or refuse a proper bond offered. In § 5887 it is provided that all persons in interest "may" be heard with reference to the amount and sufficiency of the bond, and further on in the section provision is made that the authority "may" take a bond for such sum as he "may" deem reasonable. Are these provisions merely directory and discretionary? Clearly they cannot be. If we hold, as we must, that the return of property attached on substitution of a bond is, under the statutes, a matter of right in favor of the defendant and not of discretion in the authority acting upon his application, it is not reasonable to suppose that it was the intent of the legislature, by its further provision for substituted bonds, to leave that important matter to the discretion of the court in which the action may be pending. The right to the security of a good bond originally must certainly carry with it the right to have that security kept good. The court passed its order for a new bond on October 19th, 1923, and the order was extended in due form, and approved as to form by a written memorandum signed by counsel for all the parties. The mere fact that it had not been signed by the clerk cannot affect the situation. In this order the court finds that the bond ought to be granted, which is equivalent to finding the facts alleged in the application true, and then proceeds to fix a time for giving the new bond, and, in case of failure to do so, to order a default according to the provisions of the statute. The application for a dissolution of the order

Capobinco *v.* Samorak.

was made by an attorney for the surety on the original bond, who, as the trial court states, had no standing in court to make the application, but who presented facts which the court says could not be disregarded. In effect, the court was acting upon its own motion upon the suggestion of an *amicus curiæ,* that the order as passed was inequitable and would work injustice to the extent of being an abuse of process, in that there would follow merely a hearing in damages, and not the trial of the issues. If we are correct in what has been said before, and the plaintiff was entitled of right to the order granted by the court, then the consequences provided for default in obeying the order were no concern of the trial court, except in its order to fix the time after which these consequences would ensue. The right to the order carried with it the right to a default, if it was not obeyed. This was the act of the law. No suitor can be heard to resist the application of a law enacted to promote ends deemed generally beneficial, because he deems its application will work him harm. The harm that may come to him is by the act of the law, not of the court. Legally it cannot be held to harm him. *Actus legis nemini est damnosus.* The tactical advantage gained by the plaintiff by the order originally passed did not result from any action or scheme of his own. It arose entirely as the consequence of the acts of the defendants. We assume that the trial judge regarded the section as conferring discretion in the matter and that he was not attempting to dispense with the provisions of the statute, yet the situation of the cause at the time, and some expressions in the memorandum vacating the order, render it necessary to make clear the law governing such matters. As regards the surety, we fail to see why he is especially to be regarded as compared with the plaintiff, or that he has any equities of an appealing nature.

Plaintiff in the action had obtained certain security by his attachment, security which the law gave him; this security was taken from him by the law and another form of security substituted by the coöperating act of the defendants and their surety; by fleeing the jurisdiction, defendants were beyond the reach of the court; this was perhaps unfortunate for the surety, as it was to plaintiff, but certainly placed the former in no favored position. He had encountered no hazard not inherent in the position of bondsman.

The disposition of the case which we make renders the consideration of the other reasons of appeal unnecessary.

, There is error and a new trial is ordered.

In this opinion the other judges concurred.