WILLIAM S. SKLAR ET AL. *v.* ESTATE OF
JULIUS SKLAR

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued December 4, 1974—decision released March 11, 1975

*Julius B. Kuriansky,* with whom, on the brief, was *Henry L. Goldstein,* for the appellants (plaintiffs).

*Herbert L. Cohen,* with whom, on the brief, was *Irving J. Kern,* for the appellee (defendant).

HOUSE, C. J. This is an appeal from a judgment of the Superior Court denying the plaintiffs' appeal from an order and decree of the Probate Court allowing a decedent's widow $2000 per month for a period of one year to be paid out of the decedent's estate as a widow's allowance.

Julius Sklar, a resident of Stamford, died on December 3, 1971. His will was admitted to probate in the Probate Court for the district of Stamford on January 4, 1972. The plaintiffs, William S. Sklar and Betty S. Tarr, are the sole issue of the decedent's first marriage and the executors and sole residuary devisees and legatees under his will. Ruth M. Sklar, hereinafter referred to as the defendant, is the decedent's widow by his second marriage. On January 21, 1972, she filed an application with the Probate Court for the district of Stamford for an allowance of $2000 per month out of her husband's estate for her support. That court entered an order

on May 17, 1972, granting the defendant an allowance for her support from and out of her husband's estate of $2000 per month for a period of twelve months from the date of his death. The cause of the present litigation is the existence of that order and an article in Sklar's will (article eighth) which stated: "The provisions made herein for my beloved wife, Ruth M. Sklar, are in lieu of all statutory rights to which she would otherwise be entitled in my estate, including her right to any statutory widow's allowance." At the time of the hearing before the Probate Court on the application for the widow's allowance, the defendant had not elected to take either under or against the will. Subsequent to the date of the probate hearing, the time allowed for making an election pursuant to § 46-12 of the General Statutes expired and the finding of the court discloses that the defendant "has not elected to take against the Will."

Among the reasons for their appeal to the Superior Court from the order of the Probate Court granting a widow's allowance, the plaintiffs claimed that no allowance should have been granted to the defendant "in view of the explicit language of the Will," that because of that provision she should have been obliged to make an election to take either under or against the will before any order for a widow's allowance was made, that any allowance, if granted, should be made a charge upon the share she would receive from her husband's estate, and that the defendant had failed to establish the necessity for a widow's allowance in this case.

In denying the plaintiffs' appeal from the order of the Probate Court, the Superior Court concluded (a) that under the provisions of § 46-12 of the Gen-

eral Statutes the defendant, as a surviving spouse, was given the right to elect to take either under or against the will, and, in addition thereto, the right to apply to the Probate Court for a widow's allowance for support, (b) that the provisions of article eighth of the decedent's will did not preclude the Probate Court from granting a widow's allowance, and (c) that the allowance as made was reasonable and justified by the inventory and actual value of the estate. The plaintiffs claim that the court erred in reaching these conclusions, in overruling their claims of law, and in rendering judgment for the defendant. The first two assignments of error essentially raise the same issues, which are stated in the plaintiffs' brief to be: "1) Whether the appellee-defendant was entitled to a widow's allowance when the decedent's Will specifically provided that the other provisions in the Will were 'in lieu of all statutory rights to which she would otherwise be entitled in my estate, including her right to any statutory widow's allowance.' 2) Whether a widow was obliged to make her election to take against the Will in order to qualify for a widow's allowance under § 46-12 of the General Statutes in view of the above exclusionary language."

The lengthy provisions of § 46-12 of the General Statutes as it read at the time of these proceedings insofar as they are relevant here may be briefly summarized. They allow a surviving spouse an election to take according to the provisions of the deceased spouse's will or, in the alternative, to take a fixed portion of the deceased spouse's estate, and provide that "such election shall be made in writing signed by the party entitled to make the same and lodged with the court of probate before which such estate is in settlement, within two months

after the expiration of the time limited for the exhibition of claims against such estate; and, if not so made, such person shall be taken to have accepted the provisions of the will and shall be barred of such statutory share." The statute further provides that "[a] surviving spouse shall also, when in the opinion of the court of probate it is necessary, be allowed a reasonable sum from such estate for his or her support and for the support of his or her family during the settlement of the estate; but, in that case, such person shall not take his or her statutory share until the expiration of the time for which such allowance is made."

It is the clear import of the language of § 46-12 that regardless of what election is made by the surviving spouse—to take under the will or to take a statutory share—that spouse shall "also," when in the opinion of the court of probate it is necessary, be allowed a reasonable sum for support during the settlement of the estate. As this court observed in *Baldwin* v. *Tradesmens National Bank,* 147 Conn. 656, 661, 165 A.2d 331: " 'It was the practice, from a very early time in our history, . . . for the court administering the estate of a deceased person, to make such allowance out of the estate as it deemed proper for the support of the widow . . . of the deceased during the settlement of the estate; and this practice became a part of our common law. . . .' *Havens' Appeal,* 69 Conn. 684, 698, 38 A. 795." "The allowance to a widow for her support is in the nature of a continuance of the support after the husband's death which he or his estate had furnished her before his death. But for it the widow and family, even where there is ample estate, might be subjected to great inconvenience and perhaps brought into an extremity. There is at first no legal certainty as to

the condition of the estate, and until that certainty is arrived at by the completion of the settlement of the estate, the widow and family keep on, ordinarily in the home where they have lived, supported by a reasonable allowance from the estate." *Baker's Appeal,* 56 Conn. 586, 588–89.

In holding that an allowance ordered by a Probate Court for a widow's support pending settlement of her deceased husband's estate was not subject to attachment by her creditors, this court, speaking by *Pardee, J.,* had this to say in *Barnum* v. *Boughton,* 55 Conn. 117, 118–19, about such allowance: "Upon the death of a man the law takes instant possession of his entire estate in the interest of an orderly appropriation thereof, first, to the payment of certain preferred debts; secondly, of the remaining debts in equal proportions; thirdly, for the payment of specific legacies; the remainder to be divided among the heirs. If there are wife and children surviving, presumably they are without means for providing themselves with instant food and fuel, except as they may claim these necessaries from the hand of public charity; and must so continue until the law has completed the work of division; a work of statutory necessity, spreading over a considerable space of time. In the interest of humanity and for the prevention of what in almost every case would be an unseemly and unnecessary demand upon public charity, the law provides that the probate court may make such temporary allowance to the widow or children as shall supply their daily recurring needs. Of course, if it shall finally result that the estate is not equal to the debts, these last are to bear the burden of the temporary necessities of the family. This is no hardship, because every man knows when he gives credit to another that death may overtake

the debtor when he is unable to pay and that a portion of such assets as he may have will be expended for the temporary support of his wife and children. It is a risk intentionally assumed, and the result therefore not to be complained of. If such an allowance has been made to a widow it is in no such sense a debt from the estate to her as that her creditor can intercept it by attachment on its passage from the estate to her. The grant is in derogation possibly of the rights of creditors of the estate; it is permitted for one purpose only—to feed her from day to day; dedicated by statute to a particular use in such manner as to be incapable of appropriation to any other; she could neither ask nor receive it for the payment of her debts; the probate court could not grant it for that purpose; and, even if allowed, the court upon coming to the knowledge of the fact that it was not needed for the supply of her wants, might revoke it. If one allowance can be intercepted so can every other; for if the door is opened for one creditor it cannot be closed against any; and the entire estate might thus be diverted from its legal destination. The law will not permit the instant necessities of the widow and the ultimate rights of the creditors of the estate to be postponed, in its name, to the demands of her creditors."

The problem presented by the appeal is the subject of a note in 97 A.L.R.2d 1319 entitled "Effect of testamentary gift on widow's right to fixed statutory allowance for support." As the cases therein cited indicate, there is no unanimity as to the effect of a provision in a will that the testamentary disposition for a surviving spouse shall be in lieu of statutory allowance for support pending settlement of the estate. Such a provision brings into conflict two settled legal policies. The first is that "[i]n the

absence of compelling reason to the contrary, effect must be given to the testator's intention as . . . expressed and directed in the will. *Central Hanover Bank & Trust Co.* v. *Mason,* 129 Conn. 350, 351, 27 A.2d 797." *Weidlich* v. *First National Bank & Trust Co.,* 139 Conn. 652, 657–58, 96 A.2d 547. It is also expressed in *Reaney* v. *Wall,* 134 Conn. 663, 666–67, 60 A.2d 505: " 'The cardinal rule of testamentary construction is the ascertainment and effectuation of the intent of the testator, if that be possible. If this intent, when discovered, has been adequately expressed and is not contrary to some positive rule of law, it will be carried out.' *Swole* v. *Burnham,* 111 Conn. 120, 121, 149 A. 229." On the other hand, it is a long-established policy of the state now codified by statute that a probate court may grant an allowance for the support of a surviving spouse pending settlement of the estate and it is recognized that such an allowance "is not a property right, nor in any sense an allowance of a share from the estate, nor an apportionment to her from the estate"; *Baker's Appeal,* supra, 588; and that the award by order of the Probate Court "is a discretionary act, having no reference to or effect upon any provision of the will, nor upon the right of any heir or legatee," it being "a matter wholly for the probate court to determine." *Lawrence* v. *Security Co.,* 56 Conn. 423, 443, 15 A. 406. It is akin to the public policy which requires a husband or wife to furnish support to a spouse regardless of personal wish or choice. See General Statutes §§ 17-320, 17-321 and 46-10.

We conclude that the public policy expressed in the latter portion of § 46-12 of the General Statutes authorizing the Probate Court to grant a widow's allowance pending the settlement of her husband's

estate is so independent of the will, well established, and compelling that it must prevail over any contrary intention expressed in the husband's will. Accordingly, an attempt in his will to interfere with the exercise of the Probate Court's discretion or the right of the widow to the benefit of the allowance for support permitted to her by statute, or to require her to make an election between the benefits under his will and the statutory allowance during the period of administration, is contrary to public policy and void. In reaching this conclusion, we find ourselves in agreement with the decisions reached in the following cases, among others: *Bankers Trust Co.* v. *Allen,* 257 Iowa 938, 135 N.W.2d 607; *Hill* v. *Kalamazoo Probate Judge,* 128 Mich. 77, 87 N.W. 113; *Collier* v. *Collier's Executors,* 3 Ohio St. 369, 375–76; *In re Stachnick's Estate,* 376 Pa. 592, 595, 103 A.2d 765; *In re Peebles' Estate,* 157 Pa. 605, 27 A. 792.

The plaintiffs next assign error to the conclusion of the court that the allowance as made was reasonable and justified by the inventory and actual value of the estate. They claim that the defendant failed to demonstrate the necessity for such an allowance and that it was excessive in view of all the circumstances. The statute (§ 46-12) allows a reasonable sum "when in the opinion of the court of probate it is necessary . . . for . . . her support . . . ." Thus, in the first instance, the decision rested in the sound discretion of the Probate Court. With respect to the exercise of such discretion, this court has observed: "We are aware, that courts of probate have long exercised the power of making allowances for the support of a family, when necessary, during the settlement of the estate; and that power has been confirmed by statute. But the power of taking

the property of an heir or devisees, and appropriating it for the benefit of others, without the consent of the owner, ought to be cautiously exercised, and never carried beyond the necessary requirements of the case." *Leavenworth* v. *Marshall,* 19 Conn. 408, 418. The exercise of that discretion, which existed in the first instance in the Probate Court, "passes to the superior court on appeal and is to be exercised by it in an independent determination, without regard to the result reached by the probate court." *Prince* v. *Sheffield,* 158 Conn. 286, 299, 259 A.2d 621.

The record discloses that the Superior Court considered a great deal of evidence pertaining to the income and estate of the decedent as well as of the defendant, the life style and standard of living enjoyed by them during their marriage, as well as the defendant's other sources of income, all as reported in the court's finding of facts. See *Baldwin* v. *Tradesmens National Bank,* 147 Conn. 656, 661, 165 A.2d 331. On the record, it cannot be held that the court failed to consider the pertinent circumstances or abused its discretion in reaching its decision as to the allowance granted to the defendant.

The plaintiffs further contend that if the allowance was properly granted, then it should be made a charge upon the share of the estate which the defendant would receive from the decedent's estate pursuant to the terms of the will. A similar claim was made in *Baldwin* v. *Tradesmens National Bank,* supra, where this court noted (p. 663) : "That such an order may be made in a proper case is intimated, although not actually decided, in *Havens' Appeal,* . . . [69 Conn. 684, 701, 38 A. 795]. See *Leavenworth* v. *Marshall,* . . . [19 Conn. 408, 419] ;

2 Locke & Kohn, . . . [Conn. Probate Practice] § 392, p. 313; *Weidlich* v. *First National Bank & Trust Co.*, 140 Conn. 686, 687, 103 A.2d 198." The answer to the plaintiffs' present contention is the same as that given in the *Baldwin* case (p. 663) : "If we assume, without deciding, that the . . . Court had the requisite authority and power to order the allowance to be charged against the interest in the estate of the decedent passing to the widow under the will, we cannot say that the court, at least with regard to the period in question, should have done so."

The final issue on appeal arises from the circumstance that after the plaintiffs filed their assignment of errors, the defendant filed a motion to correct the court's findings and the court granted that motion. Such a motion has not, for some time, been a part of our appellate procedure. *Lockwood* v. *Nagy Bros., Inc.*, 150 Conn. 691, 692, 186 A.2d 82; *Franks* v. *Lockwood*, 146 Conn. 273, 276, 150 A.2d 215; Maltbie, Conn. App. Proc. § 172. However, improper as this procedure was, the plaintiffs admit in their brief that the granting of this motion availed the defendant nothing and served neither to strengthen nor weaken her position. The granting of the motion was at most a harmless error.

There is no error.

In this opinion the other judges concurred.