## Estate of William Rubinow, Deceased, Merrill B. Rubinow and Charlotte Goltz, Executors, Petitioners v. Commissioner of Internal Revenue, Respondent

Docket No. 8333–75.    Filed December 30, 1980.

*Charles D. Gersten,* for the petitioners.
*William F. Halley,* for the respondent.

Wilbur, *Judge:* Respondent determined a deficiency in petitioners' Federal estate tax of $112,188.95. Two issues are presented here for our decision: (1) Whether the widow's allowance provided by a Connecticut statute qualifies for the marital deduction under section 2056,[1] and (2) whether the share of the estate received by the widow following disclaimer of her interest under the will qualifies for the marital deduction under section 2056.

All of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of the filing of the petition in this case, executor Merrill B. Rubinow had his legal residence in Manchester, Conn., and executrix Charlotte Goltz resided in Haverhill, Mass.

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, unless otherwise indicated.

### FINDINGS OF FACT

William Rubinow died on January 19, 1972. He was survived by his wife, Mary Rubinow, and three children. His will and a codicil were admitted by the Probate Court, District of Manchester, Conn., and the plaintiffs were appointed as coexecutors. Insofar as is relevant here, the will and codicil disposed of the decedent's property as follows:

(1) Specific devises were made to various educational institutions.

(2) The widow received a life estate in the family home (to be disposed of upon her death in the same manner as the residuary estate).

(3) A trust was established and funded with one-third of the estate. The widow was to receive $200 per month plus operating costs of the home, and such additional amounts as the trustees determined in their discretion to be necessary for the widow's support, payable from both the principal and income of the trust. Upon the widow's death, the undistributed trust assets were to be paid to whomever the widow appointed by will, and in default of appointment, to be paid over in the same manner as the residuary.

(4) The residuary was devised to the children in three equal parts.

On March 6, 1972, Mary Rubinow applied to the Probate Court for a surviving spouse's allowance. The court granted an allowance of $20,000 and ordered that it be paid in a lump sum out of the principal of the estate. The order further stated that the allowance vested in the widow retroactively as of the moment of the decedent's death and does not terminate upon the subsequent death or remarriage of the widow or for any other reason.

Mary Rubinow did not file an election with the Probate Court to take a life use in one-third of the decedent's property, in lieu of the provisions of the will and codicil, as permitted by Conn. Gen. Stat. Ann. sec. 46–12 (West 1978).[2] Instead, on March 16, 1972, the decedent's widow and three children each filed a disclaimer with the Probate Court, District of Manchester,

---

[2]All section references are to the 1958 revision of the Connecticut General Statutes Annotated (West), as in effect on Jan. 19, 1972, the date of the decedent's death, except as otherwise indicated.

Conn., but reserved any rights they might have under the laws governing succession to intestate property.

Petitioners' estate tax return claimed a deduction for bequests, etc., to the surviving spouse of $355,013.38. The respondent disallowed the entire deduction.

OPINION

*Issue 1. Widow's Allowance*

Mary Rubinow petitioned the Probate Court for the District of Manchester, Conn., for a surviving spouse's allowance pursuant to Conn. Gen. Stat. Ann. sec. 45–250 (West Cum. Supp. 1980). The Probate Court granted an allowance of $20,000 to be paid in a lump sum out of the principal of the estate. The Court order vested the allowance retroactively as of the date of the decedent's death and prevented its termination by the subsequent death or remarriage of the widow or for any other reason.

Section 2056(a) allows a marital deduction from the gross estate in an amount equal to the value of any interest in property which passes from the decedent to a surviving spouse. Petitioners claimed that the $20,000 allowance was such an interest. Section 2056(b), however, disallows the marital deduction "Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail." This is the "terminable interest rule."[3]

---

[3]Insofar as relevant herein, sec. 2056 provides:

SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION. —For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b) and (c), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST. —

(1) GENERAL RULE. —Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

Whether or not the terminable interest rule is properly invoked depends on the application of State law to the facts and circumstances. *Hamilton National Bank of Knoxville v. United States*, 353 F.2d 930, 932 (6th Cir. 1965). There are, however, some ground rules to guide us. The terminability of the interest must be determined as of the date of the decedent's death. *Jackson v. United States*, 376 U.S. 503, 508 (1964). "If, viewed at the time of the death, the interest bequeathed to the spouse might terminate under some circumstances, that interest is terminable for the purposes of section 2056(b)(1) regardless of what subsequent events came to pass." *Allen v. United States*, 359 F.2d 151, 154 (2d Cir. 1966).

Examining Connecticut law, we find that the allowance for support of the surviving spouse is a terminable interest in that the allowance does not vest indefeasibly at the date of the deceased spouse's death. Connecticut has provided by statute for an allowance to a surviving spouse. Connecticut General Statutes Annotated section 45–250 (West Cum. Supp. 1980),[4] provides in relevant part:

*Allowance for support of surviving spouse and family.* * * *

(a) The court of probate *may* allow out of any real or personal estate of a deceased person in settlement before such court such amount as it *may* judge necessary for the support of the surviving spouse or family of the deceased during the settlement of the estate.

(b) In making such allowance the court *may in its discretion* include in its decree ordering such allowance any one or more of the following provisions, to the extent they are not mutually inconsistent:

(1) A provision that such allowance shall run (A) for the entire period the estate is in settlement, or (B) for a fixed period of time not to exceed the period

---

and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—

(C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

For purposes of this paragraph, an interest shall not be considered as an interest which will terminate or fail merely because it is the ownership of a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity for life or for a term.

[4]See also Conn. Gen. Stat. Ann. sec. 46–12 (West 1978) (now Conn. Gen. Stat. Ann. sec. 45–273a (West Cum. Supp. 1980)) which provided in pertinent part:

"A surviving spouse shall also, when in the opinion of the court of probate it is necessary, be allowed a reasonable sum from such estate for his or her support and for the support of his or her family during the settlement of the estate; but, in that case, such person shall not take his or her statutory share until the expiration of the time for which such allowance is made. * * * "

of settlement, in which case such allowance shall be subject to renewal by the court in its discretion;

(2) a provision that such allowance is to be paid in a lump sum;

(3) a provision that such an allowance made for surviving spouse shall vest in such spouse retroactively as of the moment of death of his spouse so that it will be a fixed sum certain as of said date of death and shall not terminate with the subsequent death or remarriage of the surviving spouse, such allowance to be the absolute property of the surviving spouse, or, if deceased, of the estate of such surviving spouse, without restriction as to use, encumbrance or disposition and for the purpose of this section, the right to seek such a vested allowance shall be a vested right as of the date of death of the deceased spouse, and

(4) a provision that such allowance shall be charged ultimately in whole or in part against any right the surviving spouse or other family member for whom an allowance is ordered may have to the income of the estate earned during the period of settlement. * * *

[Emphasis added.]

On the face of the statute, the Connecticut Probate Court has several crucial decisions to make: whether or not to grant the allowance, the amount of the allowance, the time period during which the allowance is to run, whether the allowance is to be paid in a lump sum, whether the allowance is to vest in the spouse retroactively as of the moment of death and not terminate with the subsequent death or remarriage of the surviving spouse, and whether the allowance shall be charged against the recipient's right to any income earned by the estate during settlement.

Connecticut decisions make it clear that the Probate Court has discretion to determine whether to make the allowance, and, if it is made, its amount and duration. *Baldwin v. Tradesmen's National Bank*, 147 Conn. 656, 165 A.2d 331, 333 (1960). The determination as to whether to grant the allowance depends on a showing that an allowance is necessary for the widow's support during the settlement of the estate. *Barnum v. Boughton*, 55 Conn. 117, 10 A. 514 (1887); *Appeal of Havens*, 69 Conn. 684, 38 A. 795 (1897). This discretion in the Probate Court has recently been reconfirmed in *Sklar v. Estate of Sklar*, 168 Conn. 101, 357 A.2d 900, 903 (1975): "the award by order of the Probate Court '[is] a discretionary act * * * ' [it being] 'a matter wholly for the probate court to determine * * * .' *Lawrence v. Security Co.*, 56 Conn. 423, 443, 15 A. 406, 411 [(1888)]."

Under an earlier version of the statute which was effectively the same as present subsection (a), it was held that the

Connecticut survivor's allowance was a terminable interest. *Second National Bank of New Haven v. United States,* 222 F. Supp. 446 (D. Conn. 1963), revd. on other grounds 351 F.2d 489 (2d Cir. 1965), affd. 387 U.S. 456 (1967). When that same court was faced with the present statute (now including the provisions of subsection (b)), the allowance was again held terminable. *Connecticut National Bank v. United States,* an unreported case (D. Conn. 1976, 37 AFTR 2d 76–1571, 76 USTC par. 13,132), affd. in open court (2d Cir., Nov. 10, 1976).[5] The District Court explained its decision as follows:

It is not all plain in Connecticut that a survivor's allowance must be granted upon request; what is plain, moreover, is that even if favorable action might be expected on any application for an allowance, and the applicant further has a "vested right" to *seek* a "vested allowance," the probate court has been expressly empowered by statute to exercise critical discretion in shaping the nature of the award, e.g., by including or omitting a provision that the allowance "shall not terminate with the subsequent death or remarriage of the surviving spouse." Such future contingencies are not the equivalent of legal assurance as of the moment of death. [*Connecticut National Bank v. United States,* 37 AFTR 2d at 76–1573; 76–1 USTC par. 13,133 at 84,388. Emphasis in original.]

We agree that under Connecticut law the critical question of vesting as of the moment of death and termination in the event of remarriage or death of the widow is contingent on future judicial proceedings. An earlier version of section 45–250 of the Connecticut General Statutes Annotated (West Cum. Supp. 1980) had provided that divestment on these grounds was not permissible.[6] But, the present statutory scheme specifically

---

[5]Although we are in agreement with the Second Circuit's decision, the circuit to which appeal in this case would lie, we are not bound by it under the rule of *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S 940 (1971), since the affirmance was in open court without opinion and the Second Circuit has indicated that such affirmances lack any precedential value. *Ruegsegger v. Commissioner,* 68 T.C. 463, 466 (1977); *Bennett Land Co. v. Commissioner,* 70 T.C. 904, 907 (1978).

[6]In 1961, the following sentences were added to sec. 45–250(a) by 1961 Conn. Pub. Acts No. 370:

"The right to support of a surviving spouse shall vest in such spouse upon the death of his spouse and shall not terminate with his subsequent death or remarriage. Any amount for support allowed to a surviving spouse shall become the absolute property of such surviving spouse or, if deceased, of his estate, without restriction as to use, encumbrance or disposition, and such amount may, upon order of the court, be paid in a lump sum. [Conn. Gen. Stat. Ann. sec. 45–250(a) (West Cum. Supp. 1980).]"

In *Second National Bank of New Haven v. United States,* 222 F. Supp. 446, 451 n. 16 (D. Conn. 1963), the court by way of dicta stated that this language "clearly makes the widow's allowance

states that the Probate Court "may in its discretion" include in its decree a provision that vests the allowance retroactively to the date of death and makes it indefeasible by subsequent events such as death or remarriage. If in its discretion, the Probate Court does not include those provisions, the same situation would exist as the Supreme Court confronted in *Jackson v. United States*, 376 U.S. 503 (1964). The widow's allowance considered in *Jackson* abated as to future payments in the event of death or remarriage. Death or remarriage prior to securing an order for the allowance eliminated any right to the allowance. The Supreme Court held the allowance (arising under California law) was a terminable interest as the widow "did not have an

---

in Connecticut eligible for the marital deduction." Unfortunately, these two sentences were later deleted from sec. 45–250(a), and sec. 45–250(b) (set out in the text above) was enacted. 1963 Conn. Pub. Acts No. 309 and 1967 Conn. Pub. Acts No. 130.

We do recognize the desire of the Connecticut legislature to qualify the allowance for the Federal estate tax marital deduction by the 1961 amendment, although we are a little puzzled by the subsequent changes which altered this language. It appears that the change in 1963 may have been due mainly to a misplaced reliance on the line of authority which was overruled the following year by the Supreme Court in *Jackson v. United States*, 376 U.S. 503 (1964). The legislature thought it would be permissible to return some of the former discretion to the probate judge. This is supported by the *Public Hearings of the Judiciary and Governmental Functions Committee of the Connecticut General Assembly on House Bill No. 3733 (An Act Concerning the Support of Surviving Spouse and Family)*, Mar. 12, 1963:

MR. LANE-RETICKER: Its main purpose has to do with the Federal Estate Tax. * * * it becomes desirable to see that the widow's allowance * * * will qualify for the marital deduction * * * . Unfortunately, the change in 45–250 which went in in the 1961 General Assembly is a straitjacket and says that this is to be true in all cases. * * * What this bill purports to do is to recognize the problem that brought forth the 1961 amendment but restore some flexibility so that it would put in the discretion of the probate court the power to make certain provisions when making a widow's allowance. The probate court could order a widow's allowance which would vest according, as in the sense of the 1961 amendment, in the widow and would be payable to her estate. *On the other hand, it could order what used to be the traditional kind of widow's allowance which is cut off if she dies during the period of payment.*

    *       *       *       *       *       *       *

REPRESENTATIVE O'BRIEN: But you're making the question of the allowance a discretionary matter with the court. Now, wouldn't that in itself disqualify the allowance?

MR. LANE-RETICKER: No, Mr. O'Brien, I believe it would not. Well, this is a very important question, and I believe the thought behind the 1961 amendment was that you had to nail it down to local law, but there is case law in other jurisdictions and there is a revenue ruling, I believe, to the effect that it's all right if it vests either under provision of local law or under a court decree. So, this purposely opens it up to put it on a basis of court decree, not under local law because the local law thing throws everyone into the same mold.

[Emphasis supplied.]

While we do not doubt that the later revision was motivated by the same desire to qualify the allowance, what was actually accomplished has failed to meet that goal. See *Connecticut National Bank v. United States*, an unreported case (D. Conn. 1976, 37 AFTR 2d 76–1571, 76–1 USTC par. 13,132), affd. in open court (2d Cir., Nov. 10, 1976).

indefeasible interest in property at the moment of her husband's death since either her death or remarriage would defeat it." 376 U.S. at 507. Similarly, under the Connecticut statute before us, at the moment of her husband's death a widow does not have a vested right to an allowance that is indefeasible in the event of death or remarriage, and whether she ever does is wholly contingent on future judicial action and committed to the discretion of the judge. This is fatal under *Jackson.*

Petitioners rely on *Estate of Green v. United States,* 441 F.2d 303 (6th Cir. 1971), for the proposition that where discretion is only as to the amount of the award, it matters not that the surviving spouse must petition the court and that the court must enter the order. However, that decision relied upon Michigan case law making mandatory an allowance that vests on the date of death and preventing divestment in the event of the surviving spouse's death or remarriage. The statute before us is unfortunately of a different species.

Petitioners also urge that the words of the statute "may allow" should be construed as "shall allow" so that the Probate Court has no discretion as to awarding the allowance when the circumstances necessitate support. See *Capobinco v. Samorak,* 102 Conn. 310, 128 A. 648, 649 (1925). The weakness of this argument is demonstrated by the statute itself. The statute uses the word "may." Had the legislature intended that the operation of the provision be mandatory, a less permissive word could have been chosen. If one were to apply this substitution consistently, the opening sentence of subsection (b) would be rewritten to read, absurdly: "the court shall in its discretion include." *Capobinco* simply requires the court to make a decision. It does not limit the court's discretion as to the content of that decision; but the exercise of power and how it is used are clearly distinguishable.

Admittedly, the marital deduction provisions are complex and have been technically construed in their application to widows' allowances for the reasons discussed in *Jackson v. United States, supra.* If the distinctions elevate form over substance, it is now a matter for Congress to address.

## Issue 2. Marital Deduction

Under his will, William Rubinow left his residuary estate to his three children and left to his wife:

(1) A life estate in the family home (to be disposed of upon her death in the same manner as the residuary estate); and

(2) One-third of his estate from which the widow was to receive fixed monthly payments plus additional amounts as were necessary for her support, to be paid from income and principal. The widow and three children all executed valid disclaimers of their interests under the will, but reserved any rights they had under the laws governing the disposition of intestate property.

Whether or not a marital deduction under section 2056 is allowable in this case depends upon the exact nature of the interest to which the wife succeeded to, under the Connecticut statute set out below, following the execution of the disclaimers. If she is entitled to a one-third interest absolutely, her interest qualifies for the marital deduction. Conversely, if she receives only a life interest in one-third of the value of all of the property, her interest is terminable under section 2056 (see note 3 *supra*) and does not qualify for the marital deduction.

Prior to January 1, 1974, section 46–12(a) of the Connecticut General Statutes Annotated (West 1978) provided insofar as is applicable here:

> On the death of a husband or wife, the survivor shall be entitled to the use for life of one-third in value of all the property * * * owned by the other at the time of his or her death * * * . The right to such third shall not be defeated by any disposition of the property by will to other parties, but, if there is no will, the survivor shall take such third absolutely * * * . If the husband has by will devised or bequeathed a portion of his property to his surviving wife, * * * such provision shall be taken to be in lieu of the share hereinabove provided for, unless the contrary is expressly stated in the will or clearly appears therein; but, in any such case, the surviving spouse * * * shall have his or her election whether to accept the provision of such will or take such life use of one third * * * , and, if not so made, such person shall be taken to have accepted the provisions of the will and shall be barred of such statutory share. In any case where the husband or wife by will does not make any provision for the surviving wife * * * such surviving spouse * * * shall * * * file a notice * * * of his or her intention to take a life use of one-third of such estate under the provisions of this section * * * and if such notice is not so filed, such person shall be barred of such statutory share. * * *

We find the statute sufficiently clear as it applies to the matter before us. Where the husband has died testate, the wife may accept the provisions of the will or elect a life use of one-third. *Only* if there is no will, is the wife entitled to take such one-third absolutely.

The present case involves a valid will which was admitted to

probate. In addition to the bequests to his wife and children, the decedent also made four specific bequests to various educational institutions. None of these institutions disclaimed their bequests. The disclaimers by the wife and children did not invalidate the entire will, but only caused a partial rather than complete disposition of the estate. So long as there is at least some disposition made, the will remains valid. See Conn. Gen. Stat. Ann. sec. 45–189 (West 1960) (when a will disposes of only part of the estate, the executor will be the administrator of the intestate estate and settle the entire estate according to the will and according to the law); cf. *Barnes v. Viering*, 152 Conn. 243, 206 A.2d 112 (1964) (document which makes absolutely no disposition is not a valid will); see also *Ferguson v. Ferguson*, 225 N.C. 375, 35 S.E.2d 231 (1945); *Rabe v. McAllister*, 177 Md. 97, 8 A.2d 922 (1939); *In re Stephan's Estate*, 142 Fla. 88, 194 So. 343 (1940); 94 C.J.S., Wills, sec. 131 (1956).

Since there continued to be a valid will in existence even after the disclaimers, it is of no consequence whether the will is considered to have made provision for the wife or not. In either case, the wife at most receives a life use of one-third. *Lewis v. Shannon*, 121 Conn. 594, 186 A. 540 (1936). This is in harmony with the statutory purpose, in that a wife who disclaims a bequest under a valid will should be left in no better position than is possible where the decedent leaves a valid will with no provision for the surviving spouse. The statute is very clear in stating that the wife is to take one-third absolutely *only* where there is no will. This is not such a case.

The thrust of petitioners' argument appears to be that since the statute is premised upon a right of election, it does not properly take into account the right to disclaim and should somehow be reinterpreted to allow the surviving spouse to receive an absolute one-third interest upon her disclaimer. Petitioners contend that the holdings in *Lewis v. Shannon*, *supra*, and *Stearns v. Stearns*, 103 Conn. 213, 130 A. 112 (1925), were repudiated by *Del Vecchio v. Del Vecchio*, 146 Conn. 188, 148 A.2d 554 (1959). In *Lewis*, the widower elected against the will to take a one-third interest for life, and also claimed the right, as the only survivor, to property that passed by intestacy due to the lapse of a bequest. In denying the claim, the court held that the interest plainly provided by the statute was "the sum total of his right of inheritance." *Lewis v. Shannon*, 186 A.

at 542. In *Stearns*, the widower accepted the provisions of the will, granting him the residue of the personal estate, and then claimed an interest in real property that passed as intestate estate. It was held that the husband, having accepted the provisions of the will, was barred of his statutory share. In both cases, there was a will and a partial intestacy, but the widower, whether he elected against the will or accepted its provisions, was specifically limited to what the statute provided.

In *Del Vecchio*, the widow's claim of undue influence would have rendered the entire will invalid. When there is no will, no election is required for the spouse to take one-third absolutely, and thus *Lewis'* holding that an election to take against a partially valid will prevents further sharing of intestate property by the surviving spouse, is clearly distinguishable. Indeed the court noted that neither *Lewis* nor *Stearns* involved total or partial intestacy arising from the invalidity of a will as a testamentary instrument. We cannot infer from *Del Vecchio* that had partial intestacy been involved, the court would have allowed the plaintiff's action.

Petitioners further urge us to consider the subsequent amendment[7] of section 46–12 of Connecticut General Statutes Annotated (West 1978) as intending to clarify the statute's meaning. Given the progressive nature of the amendment made by the legislature, in terms of the rights it generates in a surviving spouse, we believe this amendment to be a legislative change rather than a mere clarification. We do not deny that the alteration may have been spurred by legislative discontent with the judicial interpretations of the prior statute, but this does not mean that those cases did not correctly interpret the statute as it then existed. While we are certainly sympathetic to the petitioners' pleas in light of Connecticut's long delay in amending the

---

[7]For persons dying on or after Jan. 1, 1974, the language "but, if there is no will, the survivor shall take such third absolutely" has been deleted. In its place, the statute now provides: "If there is no will, or if any part of the property * * * owned by the deceased at the time of his or her death, is not effectively disposed of by the will or codicil of the deceased, the portion of the intestate estate of the deceased which the surviving husband or wife of the deceased shall take is:"

*     *     *     *     *     *     *

"(3) if there are surviving issue of the deceased all of whom are also issue of the surviving spouse, the first fifty thousand dollars plus one-half of the balance of the intestate estate absolutely * * * . [1973 Conn. Pub. Acts 73–76. This provision is now to be found in Conn. Gen. Stat. Ann. sec. 45–273a (West Cum. Supp. 1980).]"

statute to take into consideration this very valuable estate planning tool,[8] we must interpret the statute as we find it.

Having decided that at most the wife received a life use of one-third of the estate, the marital deduction must be disallowed under the "terminable interest rule" of section 2056(b)(1) as the interest will terminate on the occurrence of an event. See secs. 20.2056(b)–1(b) and 20.2056(b)–1(g), example (1), Income Tax Regs.

*Decision will be entered for the respondent.*

---

[8]In 1972, a comprehensive disclaimer statute was enacted by the Connecticut General Assembly. See Conn. Gen. Stat. Ann. secs. 45–299 to 45–312a (West Cum. Supp. 1980). This action has no direct bearing on the case at bar, as a savings clause provides that prior disclaimers are in no way impaired by the legislation. Conn. Gen. Stat. Ann. secs. 45–304 and 45–305 (West Cum. Supp. 1980).